## RORICK et v GILBERT

Ohio Appeals, 6th Dist, Lucas Co

No. 2515. Decided June 8, 1931

Messrs. Fraser, Hiett, Wall & Effler, Toledo, for plaintiffs in error.

Messrs. Kirkbride, Boesel, Frease and Cole, Toledo, for defendant in error.

**RICHARDS, J.**

It is contended on behalf of Spitzer-Rorick & Company that paragraph 5 of the contract above quoted is ambiguous and that the trial court erred to its prejudice in excluding evidence offered to explain and clarify its language, the company contending that the evidence so offered was not for the purpose of varying or contradicting the contract but to explain the ambiguous language, the meaning of the contract as drawn and the intention of the parties thereto.

After the parties had conducted a brief correspondence, Mr. Gilbert came to Toledo in order to discuss personally with the defendants the matter of making a contract, and the evidence excluded relates generally to what was said during these conversations leading up to the making of the contract. One question will suffice to illustrate the character of this evidence, and is as follows:

"Will you please tell the court and jury the substance of those talks that took place at that time?"

This question and other like questions were objected to, the objection sustained and exceptions taken. It is undoubtedly proper to permit the circumstances surrounding the parties when a contract is entered into, to be proven in order to enable the court to put itself in the place of the parties, the better to understand the terms employed, but not to contradict or vary the contract. The rule, with its limitations, is announced in Merchants National Bank vs.

Cole, 83 Oh St, 50, but it must not be broadened to permit all negotiations and discussions concurring before a written contract is made to be introduced in evidence. So far as it was necessary to place the court in the position of the parties in order to understand its terms, that was accomplished by the correspondence which was introduced in evidence without objection from either party. Although paragraph 5 may be difficult to construe, we do not think it is ambiguous, and even if it were, the ambiguity is patent and appears on the face of the contract itself. It has always been the rule of the common law that a patent ambiguity in a written instrument may not be explained by oral evidence, whereas the rule as to a latent ambiguity is otherwise.

Zydel, et al. vs. Clarkson, 29 Oh Ap, 382;

Williams, Admr. vs. Black, 34 Court of Appeals Opinions, Sixth District, unreported p. 148.

We can not find that any prejudicial error was committed in excluding evidence of this character.

After the conclusion of the evidence the company requested the court to give before argument certain written instructions and excepted to the refusal of the court so to do. Among those instructions is No. 11, reading as follows:

"I further charge you that the expression used in the contract "bad habits or improper conduct" in this case is not limited in its scope to immoral or dishonest habits or conduct, but includes any improper business conduct or bad business habits."

Manifestly, when these parties entered into the contract and authorized the employer to discharge the employe in the event that from bad habits or improper conduct he should not perform his duties to the satisfaction of the employer, they meant to include, and the language does fairly include, bad business habits and improper business conduct on his part, as that was one of the essential things about which they were contracting. The record does not show that the employe was guilty of immoral habits nor was it contended that he was so guilty, and yet the trial appears to have been conducted in part upon the theory that it was necessary to show such conduct in order to justify a discharge as being within the language quoted. It was prejudicial error to refuse to give this instruction to the jury before argument

During the trial counsel and the court

appear to have had much difficulty in determining the construction and effect of paragraph 5 of the contract, and that same difficulty has existed in the consultation room. The conclusion of the court is that the words "physical or mental disability" and "bad habits or improper conduct" on the part of the employe, as used in that paragraph, are matters of fact to be determined by the jury from the evidence and if these matters or any one of them were found to exist, in whole or in part, and if by reason thereof the employe failed to perform his duties to the satisfaction of the employer, then the employe could be discharged on sixty days notice, within the terms of the contract.

In the general charge the court instructed the jury in substance that the grounds for discharge stated in paragraph 5 were exclusive and afforded the only grounds for which the employe could be discharged. One of the basic rules of the law relating to master and servant is that an employer may properly discharge an employe who has shown himself to be incompetent, and this right to so discharge is implied in contracts of hiring.

Robertson vs. Wolfe, 49 A. L. R., 469, and note; 214 Ky., 244.

Counsel for the company insist that in the instant case there was an implied contract on the part of Gilbert that he was he was employed to perform and that for competent to discharge the duties which a breach of such implied contract the employer would be warranted in discharging him, while counsel for Gilbert contend that he could not lawfully be discharged for any reasons except those named in the contract. It is undoubtedly true that no contract can be implied in relation to any matter specifically covered by the written terms of the contract itself, as was held in **Kachelmacher vs. Laird, et al., 92 Oh St, 324.** The matters stated in pragraph 5 as justifying grounds of discharge are those relating to certain specified conditions as to the employe's duties not being performed to the satisfaction of the employer and as to those grounds of discharge they required a sixty days notice to terminate the agreement. In regard to a discharge for incompetency, the parties evidently left that to the well-known principle of law that the employe must be competent to perform the services which he is employed to perform. The law is well stated in Farmers & Merchants Bank, et al vs. Federal Reserve Bank, 30 A. L. R., 635, 262 U. S., 649, in the following language:

"Laws affecting either the construction, enforcement, or discharge of a contract, which subsist at the time and place of making the contract, and where it is to be performed, enter into and form a part of it as fully as if they had been expressly referred to or incorporated in its terms."

As said by the Supreme Court of Appeals of West Virginia in Franklin vs. Lilly Lumber Co., 66 W. Va., 165, 167, in referring to a similar clause:

"We do not think the parties meant, by the use of this clause, to waive the matter of plaintiff's competency to perform the services which he has undertaken; nor to ensure his employment for the full term of five years, regardless of his qualifications to perform, with reasonable skill, the work which he had engaged to perform. There is always an understanding, or agreement, implied in law, that when one undertakes to perform services for another, he is reasonably competent."

To illustrate, suppose a girl were employed to operate a typewriter and the contract of employment contained a clause similar to paragraph 5 in the contract involved in this case and it developed, when she entered on her employment, that she was entirely incompetent to operate a typewriter and did not know how to spell, capitalize, or punctuate, it would hardly be contended that she must be retained in the employment for a period of five years. Indeed, the trial judge, after instructing the jury that the grounds for discharge named in the contract were exclusive, also instructed them that an employe could be discharged for two other reasons, namely: an abandonment of the services by the employe or refusal or wilful failure on his part to perform the services required. The trial judge erred to the prejudice of the employer in charging the jury that the grounds named in paragraph 5 as the grounds upon which the employe could be discharged are exclusive, for if the jury found from the evidence that the employe was incompetent to perform the work which he was employed to perform, that also would be a ground for discharge under the law.

It is further contended that the verdict and judgment are excessive and against the evidence as to amount. The term of employment was to extend from January 15, 1928 to January 15, 1933, and written notice of cancellation was served on the employe January 14, 1930. This action was

commenced February 18, 1930 and the verdict was returned November 7, 1930, so that from the date of the verdict to the expiration of the term of employment was a period of more than two years and two months, and from the time the relation was severed was a period of substantially three years. If the employe had continued to render service under the contract until its expiration, he would have earned $15,000.00 according to its terms, and yet the jury, notwithstanding the fact that he rendered no service during that time, returned a verdict for the full amount of $15,000.00. In so doing no deduction was made for any amount which he might be able to earn elsewhere, and no deduction was made for possible sickness or death, and no allowance was even made that the employe would, by the judgment, receive the amount long before he would have received the sum if he had continued in the employment, that is to say, the full amount being awarded, the present worth of the same was not taken into consideration, although the average time which the amount would run would be substantially eighteen months. The verdict in that amount shocks the conscience and is manifestly against the weight of the evidence.

For the reasons given the judgment will be reversed and the cause remanded for a new trial.

LLOYD and WILLIAMS, JJ, concur.