LOCKSHIN, APPELLEE, *v.*
BLUE CROSS OF NORTHEAST OHIO, APPELLANT.

(No. 9714—Decided October 1, 1980.)

*Buckingham, Doolittle & Burroughs Co., L.P.A.,* and *Mr. Harry Stein,* for appellee.

*Ms. Carol M. Lamm,* for appellant.

BELL, P. J.  Defendant-appellant, Blue Cross of Northeast Ohio (Blue Cross or defendant), appeals the trial court's interpretation of certain benefits flowing from a hospitalization plan and the trial court's subsequent order requiring Blue Cross to pay plaintiff-appellee, Eric S. Lockshin, $176 for expenses he incurred while employing a private nurse for his wife's post-operative and post-pregnancy care. We reverse and remand.

*Facts*

Plaintiff's hospitalization benefits are covered by a Blue Cross plan made available to him by his employer. On November 21, 1978, plaintiff's wife, Carolyn, was admitted to Akron City Hospital for a Cesarean section. A week prior to the hospital admission, her physician wrote the hospital stating:

"Carolyn has requested that she be able to hire her own private nurse to care for her during her stay at the hospital and I have advised her that this would be alright."

Another letter prepared by the same physician, but for the purpose of filing a claim, states:

" * * * the nature of Carolyn Lockshin's [emotional] condition was such that special nursing care was required during the period following the birth of her baby * * * ."

Hospital records substantiate that Mrs. Lockshin's pregnancy was "uncomplicated" and that the Cesarean section presented no difficulty; in fact, she was discharged on the fifth post-operative day. Thereafter, plaintiff submitted, to defendant, a claim for $176, which reflects the cost of services provided by private nurses on November 22 and 23 of 1978.

The claim was denied by the plan's Medical Review Committee, after studying the medical records, the attending physician's letters, and other data. The defendant found the services unnecessary in view of Carolyn's medical history, the routine nature of the surgery and the lack of post-surgery complications. The claim was presented on four different occasions, with the submission of additional documents; but, in each case, the claim was denied.

The trial court found differently and defendant assigns three errors on appeal:

### Assignments of Error

"1. The judgment is not sustained by the evidence and is against the manifest weight of the evidence.

"2. The judgment is contrary to law, in that the court erred in strictly construing the language of the contract against defendant-appellant in spite of clear and unambiguous language therein so as to grant judgment for plaintiff-appellee; in that the court erred in finding that a determination of a person not a party to the contract conclusively binds the insurer; in that the court erred in finding that defendant-appellant did not have an inherent, implied, and legal right to review claims submitted under a specific hospitalization contract; in that the court erred in granting judgment for plaintiff-appellee.

"3. For other errors manifest upon the face of the record, the judgment is prejudicial to the rights of defendant-appellant."

### Law and Discussion

Since the resolution of this matter requires us to address three aspects of the same question, each of the assignments

of error are combined and discussed as they may arise. In brief, the focus of this appeal is the meaning of the word "necessary" in the hospitalization plan and whether the aforementioned services fall within that definition. However, the question of who decides what is or is not "necessary" is intrinsic in that answer and of equal importance. The trial court held that the term "necessary" was ambiguous, vis-a-vis who must ultimately decide what is "necessary." Consequently, the trial court strictly construed the policy against the drafter and found for the claimant (plaintiff). We view the result of that holding as creating a *per se* rule that the attending physician's decision on such matters is binding on the insurer. We do not believe the facts, or the insurance policy, warrant such a rule.

Succinctly stated, the insurance policy, when read in toto, requires that the services of a private nurse must be (1) necessary, (2) ordered by a physician, and (3) rendered by a "qualified" nurse. These three distinct conditions must be met before reimbursement occurs. At the center of both parties' arguments in this regard is *Heiser* v. *Blue Cross* (1979), 61 Ohio Misc. 25.

In *Heiser, supra,* the patient-claimant underwent extensive spinal surgery and had an unfortunate history of severe and dangerous urinary problems. Under the same hospitalization plan before us, the plan's Medical Review Committee denied the claimant compensation for hiring private nurses. In holding for the claimant, the trial court stated:

"Since plaintiff Eleta A. Heiser's treating physicians determined, and the evidence confirms, that private duty nursing services were necessary for the proper care and treatment of plaintiff Eleta A. Heiser, and since such services were ordered by said treating physicians and rendered by licensed practical nurses, the requirements of the contract for reimbursement by defendant to plaintiffs for nursing services have been fully complied with." *Id.,* at 28.

The above two-part analysis indicates that the trial court engaged in a careful scrutiny of the three major conditions for reimbursement in this type of matter and of the evidence as it applied to those conditions. While we agree with the method of judicial review in *Heiser, supra,* we believe that the facts before us significantly differ and require a different result.

It should be noted from the outset that a function, basic to

the insurer, is the right " * * * to determine whether * * * [a] claim should be allowed or rejected." *Stuhlbarg* v. *Metropolitan Life Ins. Co.* (1944), 143 Ohio St. 390, paragraph one of the syllabus. The function of reviewing claims is obviously reserved by the insurer and implied by the mandatory process of submitting a proof of claim. *Stuhlbarg, supra; Miller* v. *Blue Cross of Florida, Inc.* (Fla. App. 1967), 199 So. 2d 131. Without such a right, an orderly establishment, administration and dispensation of insurance benefits would be virtually impossible.

Since an insurer has a right to review claims, the terms of the insurance contract become critically important, as the insurer's interpretation of such terms may collide with those interpretations made by the insured. If a fair and reasonable interpretation, consonant with the intent of the parties, may be ascertained from the words in dispute, a resolution of the problem becomes nothing more than an evidentiary question. *Rose* v. *New York Life Ins. Co.* (1933), 127 Ohio St. 265; *Thompson Heating Corp.* v. *Hardware Indemnity Ins. Co.* (1944), 74 Ohio App. 350; *Columbus Mutual Life Ins. Co.* v. *Klein* (1930), 38 Ohio App. 157.

Turning to the word "necessary," Webster's Seventh New Collegiate Dictionary (1971 Ed.), at 564, defines it as:

"[As a noun:] * * * an indispensable item: ESSENTIAL * * *.

"[As an adjective:] **1 a:** of an inevitable nature: INESCAPABLE **b** (1): logically unavoidable (2): that cannot be denied without contradiction **c:** PREDETERMINED **d:** COMPULSORY **2:** absolutely needed: REQUIRED."

After reviewing many cases dealing with the definition of "necessary," the court, in *Group Hospitalization, Inc.,* v. *Levin* (C.A.D.C., 1973), 305 A. 2d 248, 250, concluded:

" * * * The general tenor of these opinions is that the word ['necessary'] imports something which is 'indispensable' or 'essential.' * * * "

In applying the evidence to the terms of the policy, we do not believe that the services herein were "indispensable," "essential," "unavoidable," "compulsory," or "required." The record does not show that Mrs. Lockshin had a history of medical (emotional or physical) problems, or pregnancy-related problems which would merit special professional atten-

tion. Further, the record clearly shows that Carolyn experienced no discomfort, outside those routinely associated with the surgery and routinely handled by the professional team in a maternity ward.

While the decision of a physician is both relevant and probative on the issue of necessity, it is not dispositive of the question, when, upon judicial review, the record does not confirm that determination. *Heiser, supra.* See, also, *Goldfarb* v. *Associated Hospital Service of New York* (1967), 55 Misc. 2d 76, 284 N.Y. Supp. 2d 347; *Society of New York Hospital* v. *Burstein* (1964), 22 A.D. 2d 768, 253 N.Y. Supp. 2d 753. The content of the record in the instant matter differs substantially from that alluded to in *Heiser, supra.* Indeed, evidence from Carolyn's own physician reflects that the services were purely elective in the sense of allaying misapprehension, as opposed to medical complications. Particularly persuasive is the fact that the physician sought the private services in question, one week prior to the Cesarean section, upon Carolyn's request.

To conclude, in view of our understanding of the word "necessary," the terms of the insurance contract, and the right of the insurer to review claims and dispense benefits, we hold that the contract is not unclear or ambiguous and that the evidence does not confirm the necessity of the services of private nurses.

The judgment of the Akron Municipal Court is reversed and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

VICTOR and MAHONEY, JJ., concur.