Michael J. SCHROEDER, Sr., by Paul G. Swanson, his Guardian ad Litem, and Michael J. Schroeder, Jr., as Special Administrator of the Estate of Helen E. Schroeder, Plaintiffs-Appellants,

v.

BLUE CROSS & BLUE SHIELD UNITED OF WISCONSIN, Defendant-Respondent.†

Court of Appeals

*No. 89-0150. Argued September 14, 1989.—Decided November 1, 1989.*

(Also reported in 450 N.W.2d 470.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, there were briefs by *Mary R. Curtis* of *Steinhilber, Nesbitt, Swan-*

*son & Mares* and oral argument by *George Curtis,* of counsel.

On behalf of the defendant-respondent, there were briefs by *Elizabeth Bartlett* and *Laurel Barnes* and oral argument by *David Hanson* of *Michael, Best & Friedrich,* of counsel.

On behalf of the Center for Public Representation there was an amicus curiae brief and oral argument by *Betsy J. Abramson,* of counsel.

Before Brown, P.J., Scott, J., and Robert J. Parins, Reserve Judge.

BROWN, P.J. In this insurance case, the trial court granted summary judgment to Blue Cross & Blue Shield (Blue Cross), holding that the Schroeders' expenses for home care treatment were not covered by their Medex-Plus Medicare supplement policies. We reverse, holding that the trial court improperly found that Blue Cross had reserved the right independently to determine the appropriateness of doctor-certified treatment.

Michael and Helen Schroeder were an elderly husband and wife,[1] each covered by the federal Medicare program and by a Blue Cross insurance policy supplementing Medicare coverage, Medex-Plus. In the fall of 1985, Michael Schroeder carried diagnoses of Parkinson's disease, ischemic heart disease, anemia, and carpal tunnel syndrome. Helen Schroeder carried diagnoses of cerebrovascular disease, chronic dementia, hypothyroidism, chronic depression, and hypertension.

Dr. John R. Keegan, the Schroeders' treating physician, determined that his patients should remain in their home only if home health care services were established. Home care is covered medical care under the Schroeders'

---

[1] Helen Schroeder is now deceased.

Medex-Plus policies. In consultation with the Schroeders' children, Dr. Keegan and a home health agency formulated a treatment plan for the Schroeders that included 365 home visits per year, the maximum number allowed by the Medex-Plus policy.

In conformity with the terms of the policy, Dr. Keegan set out the plan on a Blue Cross Home Health Care Certification form. On the form, he certified that all of the conditions required by the limitations sections of the policy were met. These certifications were signed bimonthly by Dr. Keegan. Blue Cross paid all home care services through August 31, 1986.

In the summer of 1986, the Schroeders received a letter from Blue Cross informing them that the company had rising costs and expenses and that to ease financial strain changes in the policy were required, effective September 1, 1986. Blue Cross offered the Schroeders two options. They could maintain the same coverage, but their premium would increase by approximately fifty percent; or, they could maintain the same premium but the coverage provisions would change and they would be entitled to only forty home care visits each year. The changes were contained in an accompanying "Amendment." The company also enclosed a form on which the Schroeders were to indicate their choice. This document informed the Schroeders that if they chose the higher premium option, they could discard the amendment. The Schroeders chose to pay the higher premium in exchange for the same coverage.

Some months later, the Schroeders were notified that all home care expenses accruing after September 1, 1986 were denied because their treatment fell outside of the limitations sections of their policies. Their home care provider ceased providing services in April of 1987,

and shortly thereafter the Schroeders entered a nursing home.

The Schroeders filed suit against Blue Cross, asserting the wrongful denial of home care benefits. Both sides moved for summary judgment. The Schroeders argued, among other things, that the limitations sections of their policies only permitted Blue Cross to deny coverage in the absence of a treating physician's certification of medical necessity. Blue Cross asserted that it could independently review the physician's determinations and certifications and that as a matter of law the Schroeders' treatment fell within the policy limitations on coverage. Blue Cross prevailed.

This case involves the interpretation of an insurance policy, which presents questions of law that we review without deference to the trial court's determination. *Kaun v. Industrial Fire & Casualty Ins. Co.,* 148 Wis. 2d 662, 667, 436 N.W.2d 321, 323 (1989). The issue is presented on a motion for summary judgment, which may be used to address issues of insurance policy coverage. *State Farm Mut. Auto. Ins. Co. v. Kelly,* 132 Wis. 2d 187, 189, 389 N.W.2d 838, 839 (Ct. App. 1986). For summary judgment to be granted, there must be no genuine issue of material fact and the movant must be entitled to judgment as a matter of law. Sec. 802.08(2), Stats.

The lead issue on appeal is whether Blue Cross has an inherent, statutory or contractual right to deny claims based on its independent determination that the doctor's certifications were unjustified. Besides addressing the issue on the merits, Blue Cross has asserted that the issue is raised for the first time on appeal and should not be addressed. We disagree.

The issue *was* raised by the plaintiffs' pleadings. In proceedings before the trial court, counsel for the

171

Schroeders did at times concede that Blue Cross could review and independently decide whether the doctor's certifications that treatment was medically necessary were justified. However, in the same proceedings, counsel mounted arguments that Blue Cross could not deny claims on that basis. Just sentences after arguing to the trial court that "Plaintiff does not contend that the defendant has no review capability," counsel continued:

> We contend that Blue Cross & Blue Shield cannot now amend Michael Schroeder's insurance contract by claiming they can summarily deny his home health care claims. There is no description in the contract which describes the appeal process or that any other documentation or evidence would be needed other than the treating physician's certificate. The home care provided to Michael Schroeder thorughout [sic] this six month period was as required in the policy supervision which [sic] registered nurses, it was certified and re-certified by the treating physician and home health care as carrying out the service [sic] that were prescribed by Doctor Keegan and the registered nurses in charge of the case. It is our position that the only definition of medically necessary that was available to the policy holder is what is contained in Exhibit A the insurance contract.

While counsel's arguments are inartful at best, and confusing at worst, we note that the Schroeders were making several arguments before the court in support of their motion for summary judgment and in opposition to the insurance company's cross-motion. Blue Cross extensively addressed the question of its right to review the certification of medical necessity in its trial briefs and the trial court addressed the argument in its ruling,

stating "I would find that Blue Cross & Blue Shield in that review policy here did not violate the terms of the contract." We conclude that all parties understood plaintiffs to be raising alternative arguments in support of their position that Blue Cross' review process was improper. The issue was thus raised, addressed and resolved in the trial court and is properly before us on appeal.

Blue Cross takes the position that insurance companies have an inherent right to review claims for coverage and determine whether the claim is covered under the policy. We assume without deciding that such is the case. We conclude, however, that Blue Cross has by contract designated the doctor's certificate as conclusive proof of coverage and abdicated any role it might have reserved for itself as final arbiter of medical necessity.

Coverage refers to the sum of risks which an insurance policy covers. *D'Angelo v. Cornell Paperboard Prods. Co.,* 59 Wis. 2d 46, 51, 207 N.W.2d 846, 849 (1973). Assuming *arguendo* that Blue Cross has the inherent right to hold a claim for coverage against the policy and compare the claim with the covered risk, we are faced with a preliminary issue: the determination of what risks Blue Cross contracted to cover. This coverage question is one of contract interpretation and is reviewed by this court *de novo. See American Mut. Liab. Ins. Co. v. Fisher,* 58 Wis. 2d 299, 304, 206 N.W.2d 152, 155 (1973).

We may not modify the unambiguous language of an insurance policy. *Northwestern Nat'l Ins. Co. v. Nemetz,* 135 Wis. 2d 245, 254, 400 N.W.2d 33, 37 (Ct. App. 1986). However, where an ambiguity exists, we must construe the policy against its drafter and in favor of the insured.

*Id.* at 254–55, 400 N.W.2d at 37. An ambiguity exists when the policy is reasonably susceptible of more than one construction from the viewpoint of a reasonable person of ordinary intelligence in the position of the insured. *Id.* at 255, 400 N.W.2d at 37.

The Schroeders' policy includes two pages of definitions. Medical necessity is not defined.

Part VII of the policy, entitled "Limitations," states:

> 1. [Blue Cross] won't pay any benefits unless *your physician* certifies to *us* that the service or supply *you* received was medically necessary for *your* care. *We* can ask for this certification as often as *we* deem appropriate. [Emphasis in original.]

The home care section of the policy has its own limitations clauses, one of which states:

> Benefits for home care are limited as follows:
> . . ..
>
> 2. *Your physician* must certify that:
> a. *You* would have been in a hospital or *extended care facility* if *you* didn't receive home care.
> b. *Your* immediate family or others living with *you* couldn't give *you* the care *you* needed without causing undue hardship.
> c. *Your* home care is provided or coordinated by a home health agency or a certified rehabilitation agency licensed by a state or certified by *Medicare.* [Emphasis in original.]

Part VIII, entitled "Exclusions," states:

> *We* won't pay benefits under this policy for the following:
> 1. Charges *Medicare* considers unreasonable or unnecessary.

. . ..
15. Care which isn't medically necessary for *you*. [Emphasis in original.]

These provisions, fairly read, are susceptible of two distinct, reasonable meanings. Under one such reading, the medical necessity for home care is defined by the three elements that the physician must certify are present. Under this reading, the contract reserves to two entities the right to determine the medical necessity of care: Medicare and the insured's treating physician. Assuming, as here, that Medicare does not dispute the determination, then insureds fall outside the relevant policy limitations when their physicians make the necessary certification.

Although clearly capable of drafting a reservation of the right to have a voice in determining the necessity of care, see part VIII, sub. (1) above, no such reservation is made for Blue Cross. The limitations provisions indicate that Blue Cross has delegated the determination of necessity to the doctor and to Medicare. Under these provisions, Blue Cross' opinion as to the propriety of the physician's determinations is irrelevant to the determination of whether coverage is afforded for any particular claim.

Arguably, the insurance exclusion clause providing that Blue Cross will not pay benefits for care not medically necessary renders the contract ambiguous on the issue of who determines medical necessity. Since this clause is silent regarding who makes the determination that care is not medically necessary, Blue Cross argues that the only fathomable meaning of the language is that Blue Cross would independently review the physician's certification. In that case, certification in the absence of Medicare's objection is not conclusive proof of the issues certified, as other policy clauses indicate.

175

The contract is thus ambiguous on the subject of what claims are covered. Under one reading, the policy covers medically necessary treatment, in which case the certification is but one element of an insured's proof. Under the other reading, the contract limits coverage to treatment that is certified as medically necessary; the determination of medical necessity, however, is delegated to Medicare and the treating physician. In the latter case, Blue Cross' opinion as to medical necessity is irrelevant to coverage: the doctor's certification determines the issue.

Blue Cross' argument that it has an inherent right to determine whether services rendered meet the policy criteria is the catalyst for its conclusion that it has the right to determine independently whether those services were medically necessary. This argument begs the question, however, because we are here determining the coverage criteria. We know of no inherent right to review medical necessity if that is not a coverage criterion and the cases cited by Blue Cross do not so hold.

For example, Blue Cross cites *Lockshin v. Blue Cross of Northeast Ohio,* 434 N.E.2d 754 (Ohio Ct. App. 1980), which states that "a function, basic to the insurer, is the right . . . to determine whether . . . [a] claim should be allowed or rejected." *Id.* at 756. This case stands for a right to review claims, not an inherent right to review medical necessity. The case does not recite the contract, but the court found that the policy was unambiguous and required three distinct conditions to be met before private nurse coverage was afforded: necessity, physician's order, and qualified nurse. *See id.* at 755, 757. Thus, necessity was separate and distinct from the doctor's order and the insurance company could determine whether each of the distinct conditions had been met. In the Schroeders' case, however, we have already

determined that the policy is ambiguous as to whether "necessity" is a distinct limitation separate from the doctor's certification.

Similarly, in *Sarchett v. Blue Shield of California,* 729 P.2d 267 (Cal. 1987), the court found a contract provision providing for an impartial review committee to resolve disputes concerning "therapeutic justification for any services." *Id.* at 271. Again, as in *Lockshin,* the determination of medical necessity was found to be distinguished from the doctor's determination of medical necessity by specific contractual terms.

In *Free v. Travelers Ins. Co.,* 551 F. Supp. 554 (D. Md. 1982), the court first found that the policy unambiguously covered medical expenses "necessarily incurred" and "required" for treatment before it looked beyond the physician's recommendation and treatment of Free with laetrile to determine the necessity of that treatment. *Id.* at 558. This analysis does not implicate an inherent right to review the determination. The analysis instead turns entirely on interpretation of the insurance contract, which the court found unambiguous. Further, neither Free nor his doctor claimed that laetrile treatment was necessary or required; the treating physician had required Free to sign a consent form that stated "no specific claim is being made for the cure, treatment, or amelioration of cancer or other diseases in the use of [laetrile] . . .." *Id.* at 556.

In sum, we simply do not think that these cases stand for an inherent right in the insurance company to review claims for the purpose of determining medical necessity. The insurance company must first show that its opinion as to medical necessity is relevant to coverage under the contract.

Blue Cross argues that sec. 632.895(2)(g), Stats., gives insurance companies a right to review the medical necessity of treatment. We disagree. That section states:

> Insurers reviewing the certified statements of physicians as to the appropriateness and medical necessity of the services certified by the physician under this subsection may apply the same review criteria and standards which are utilized by the insurer for all other business.

*Id.*

We see in this language only legislation enabling insurance companies to use their usual methods of reviewing medical necessity. The statute does not, however, speak to those companies that have contracted away the right to review that determination, nor does it forbid the company from making such a contract. This statute does not apply until the insurance company shows that its opinion as to medical necessity is relevant under the contract.[2]

Finding neither an inherent right nor a statutory mandate requiring health insurers to review a physician's determination that care is "medically necessary," we turn to other methods of resolving the contractual ambiguity, keeping in mind that Wisconsin law directs

---

[2]Blue Cross points to Wis. Adm. Code sec. *Ins. 3.54* (3)(d), which defines "medically necessary" as, among other things, "[i]n accordance with generally accepted standards of medical practice" and "[n]ot solely for the convenience of the insured or the physician." However, sec. *Ins. 3.54* applies only to policies issued or renewed on or after June 1, 1987. *See* Note, *id.* The Schroeders' policies were renewed monthly. Their lawsuit seeks reimbursement for home care services performed through March 31, 1987. Their claim is not governed by the administrative rule, which was not in effect when their claims for reimbursement were denied.

that our construction of insurance clauses that limit liability be in favor of the insured. *Kozak v. United States Fidelity & Guar. Co.,* 120 Wis. 2d 462, 467, 355 N.W.2d 362, 364 (Ct. App. 1984).

The policy interpreted as a whole supports the Schroeders. It delegates determinations of medical necessity to the treating physician. It reserves the right to require certification as often as Blue Cross deems appropriate. The importance of the certification to coverage is thus stressed and obvious and it appears as a delegation of the determination of medical necessity to the treating physician. We therefore find less than persuasive Blue Cross' argument that silence in the "Exclusions" section regarding who determines absence of medical necessity reserves the determination to Blue Cross. Since medical necessity is defined in the policy only in terms of what the physician must certify, a far more reasonable reading of the "Exclusions" clause is that claims will be denied when made without a certification. "Medical necessity" appears to be a shorthand term for the elements that the doctor must certify. The policy thus represents a contracting away of any right Blue Cross might have reserved to render an opinion as to medical necessity when a claim for coverage is presented. We cannot release an insurer from a risk that may have been excluded through more careful contract drafting. *Nemetz,* 135 Wis. 2d at 256, 400 N.W.2d at 38.

The Montana Supreme Court reached a virtually identical conclusion in *Fassio v. Montana Physicians' Serv.,* 553 P.2d 998 (Mont. 1974). In that case, an insurance policy covered medical expenses for "necessary services performed or prescribed by a physician" and excluded "services not necessary." The court found that

the contract unambiguously covered all medical services performed or prescribed by a doctor:

> An exhaustive search of cases . . . fails to give us an exact definition of the word *necessary*. In this context we might say the word *necessary* is ambiguous, but we do not so hold as it is used in these contracts in the context of medical services performed or prescribed by a physician . . ..

> The language of these insurance contracts was carefully chosen. This was done in the absence of the Fassios and used to carefully limit and protect the carrier . . . against extended liability. If [the insurance company] wishes to exclude or limit the risk contracted for, then let them do so in words that leave no doubt. [Emphasis in original.]

*Id.* at 1000.

Blue Cross points to the following language in support of its position that the contract informs the insured of Blue Cross' intent to review medical necessity:

> *You* agree to cooperate in providing *us* with information *we* need to pay *your* claims. This includes agreeing to the release by hospital and doctor of *your* patient health care records to *us.* [Emphasis in original.]

This clause informs the insured that release of information may be needed in order for claims to be *paid.* It does not contain any information about a review process concerning the substance of the claim, or hint that claims may be denied based on that information. This clause discusses facilitating payment, not denying claims.

Further, even if this clause were read as putting an insured on notice that Blue Cross would be reviewing claims, it would not resolve the relevant question here:

180

whether Blue Cross intended to determine medical necessity. Rather, the review could enable Blue Cross to determine whether a certification it believed to be forged was in fact genuine. Or the review could enable Blue Cross to determine whether the services rendered met the specific conditions and exclusions set out in other sections of the contract. *See Van Vactor v. Blue Cross Ass'n,* 365 N.E.2d 638, 644 (Ill. App. Ct. 1977).

In addition to the language of the contract, the actions of Blue Cross indicate that we should read the contract as do the Schroeders. In construing a contract, the conduct of a contracting party while acting under the contract can on some facts be a "most persuasive" element. *D'Angelo,* 59 Wis. 2d at 50, 207 N.W.2d at 849. In the instant case, Blue Cross' actions indicate that it read the Schroeders' policy as limiting coverage to certified medical treatment.

First, Blue Cross provided coverage for a year without opining as to medical necessity or otherwise questioning the doctor's certification. This conduct suggests that Blue Cross itself considered certification determinative of whether the claims fell within or without the policy limitations. Further, if Blue Cross considered home care an inherently short-term benefit that became more suspect with the passage of time, it is unlikely to have tendered payment for a year without review.

Second, the letter sent to policyholders in 1986 expressly provided two coverage options beginning in September. One option provided forty home care visits at the same monthly rate as the Schroeders had been paying, and the other provided for 365 visits at an increased rate. The former option included an amendment stated by the insurance company to be a "change" in the policy. The amendment, however, applied only to

181

the forty-visit option. Those choosing the 365-visit option were told that the amendment "will *not* apply to my policy and that I may discard the amendment." (Emphasis in original.)

The amendment includes a definition of medical necessity, not present in the original policy. It is defined as "benefits . . . available only for services or supplies that are required to identify or treat YOUR illness or injury under a HOME CARE program, as determined by US." (Emphasis in original.) But this amendment, expressly reserving to Blue Cross the right to opine as to medical necessity before paying claims, expressly applies only to those choosing the forty-visit option and does not apply to the Schroeders, who chose the 365-visit option.

The amendment, read in conjunction with the original policy, would have made clear that Blue Cross was recontracting for the right to limit coverage based on its own determination of what the treating physician had certified to be true. The amendment is not included in the Schroeders' policy, however. Blue Cross nonetheless asserts that the policy always limited coverage based on the insurer's independent determination. Blue Cross cannot have this both ways. It cannot assert that it is offering a change in the policy that provides Blue Cross a right to determine medical necessity independently, and simultaneously assert that the right to make that determination was always present.

The only reasonable reading of this insurance policy is that it limits treatment to services rendered upon certification of the treating physician, and we so hold.

We note the public policy argument mounted by Blue Cross that physicians who are made final arbiters of coverage will abuse the power, resulting in overuse of

medical procedures and imposing excessive costs on the insurer. That concern does not appear to be implicated here, for Blue Cross delegated the determination to both the physician and to Medicare.

We also note, however, that we are not denigrating the wisdom of insurance companies reviewing physicians' judgments. We are only holding that, under this policy and these circumstances, Blue Cross' review was foreclosed by the contract language.

At oral argument, Blue Cross argued that a certifying physician may stand to benefit from the certification and that Blue Cross must therefore be able to review the doctor's determination to evaluate whether fraud or bad faith may be present. We agree that the obligations of good faith and fair dealing are inherent in every insurance contract. *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 689, 271 N.W.2d 368, 375 (1978). But Blue Cross did not plead or argue fraud or bad faith in the trial court. The issue is therefore waived. *See State v. Holland Plastics Co.,* 111 Wis. 2d 497, 504, 331 N.W.2d 320, 324 (1983).

As noted, we assume that an insurance company has a right to review claims to determine whether they meet conditions for coverage. The relevant condition for coverage of the Schroeders' claims is certification by their treating physician that the conditions set forth in the limitations section of their policies were met. This condition is satisfied. Dr. Keegan is a physician as defined under the policy. He was the Schroeders' treating physi-

cian. Every certification required he made on a Blue Cross form. Blue Cross therefore must provide coverage.

*By the Court.*—Order reversed.