OPINION
{¶ 1} This is an appeal and cross appeal of certain decisions of the Court of Common Pleas of Stark County arising out of a complaint for Declaratory Judgment, Breach of Contract and Injunctive Relief with an amended counterclaim for Injunctive Relief.
 {¶ 2} This case is related to issues raised in Appellate Cases 2004CA00395, 2005CA00032, and 2005CA00045, all of which were combined for purposes of oral argument.
 {¶ 3} Appellant (Republic) is the owner of premises known as Countywide Land Fill in Pike Township, Stark County, Ohio, the use of such land being obvious is not set forth.
 {¶ 4} Appellee (Club 3000) was incorporated as a non-profit corporation in 1987, with a charter cancellation in 1997 and a re-instatement in 2002. Its purpose was to provide opposition to the landfill being operated by Republic and its predecessor.
 {¶ 5} In 1989 a permit was issued by the director of the Ohio Environmental Protection Agency to permit a solid waste disposal facility on the land now owned by Republic. Club 3000 appealed such decision by the Director to the Environmental Board of Review.
 {¶ 6} These proceedings were resolved by an agreement between the parties which, with subsequent actions, formed the basis for this action and, of necessity must be reiterated herein.
 {¶ 7} Such agreement stated in part:
 {¶ 8} "1. Countywide Landfill, Inc. shall allow authorized representatives of Club 3000 access to Countywide Landfill for the purposes of observing, inspecting and investigating the site and inspecting and copying any of the documents identified in paragraph six and daily waste receipt records. Such access shall be during Countywide Landfill's regular hours of operation and upon 24 hours notice. Countywide Landfill may waive advance notice and permit access if appropriate supervisory personnel are available. Within thirty (30) days of the signing of this Agreement, Club 3000 shall provide Countywide with a list of no more than six (6) individual members who shall be considered its designated representatives for the purposes of carrying out the inspections and investigations authorized by this provision. Should any change in the identification of the designated representatives become necessary, Club 3000 will provide reasonable notice of such change to Countywide Landfill.
 " * * * {¶ 9} "6. Countywide will provide to Club 3000 the following documents by regular U.S. mail, postage prepaid, at the same time such items are provided to the Ohio Environmental Protection Agency (hereinafter Ohio EPA):
 {¶ 10} "a. Inspection reports, notices of violations and responses of Countywide thereto;
 {¶ 11} "b. all documents submitted to the Ohio EPA in support of any proposed modification of its PTI;
 {¶ 12} "c. monthly waste receipt logs; and
 {¶ 13} "d. all monitoring reports required to be submitted to Ohio EPA.
 {¶ 14} "Club 3000 shall provide to Countywide within thirty (30) days of the signing of this agreement the name and address of its designated representative to whom the above-described reports shall be sent.
 {¶ 15} "7. Club 3000 shall be notified of and may be present at all sampling events scheduled in accordance with the PTI at Countywide Landfill. Furthermore, Club 3000 shall have the option of obtaining split samples at any of the sampling events it attends, provided that Club 3000 utilizes a laboratory for the analysis of the samples so obtained which is capable of following and agrees to follow the technical protocols for sample collection and analysis which is employed by Countywide Landfill in connection with its sample collection and analysis procedures.
 {¶ 16} "Within thirty (30) days of the signing of this agreement, Countywide will provide a copy of its technical protocols for sample collection and analysis to Club 3000 by way of the person it designates to receive the documents described in paragraph six (6) above.
 " * * * {¶ 17} "11. This Agreement shall be binding upon the Parties hereto, their agents, officers and employees and their successors and assigns and those acting in concert or privity with them. This Agreement shall also be binding upon any transferee of Countywide Landfill whether such transferee is a transferee of Countywide Landfill, Inc. or not. The terms and conditions contained in this Agreement shall survive the transfer of Countywide Landfill to any transferee." Appellee's Brief, pp. 2-4, 9-10.
 {¶ 18} Subsequent to such agreement, Republic requested authorization to expand its permit area.
 {¶ 19} Republic, in this action, sought a determination that such Agreement was no longer binding and that it had been breached by Club 3000 and such club sought, by injunction, access to Republic's premises and documents, observation and inspection and to prevent such expansion. The preliminary injunction of Club 3000 was granted as to inspection, monitoring and investigation as per the prior settlements agreement but denied the requested prevention of expansion.
 {¶ 20} After trial the Court issued extensive findings of fact and conclusions of law out of which this appeal and cross appeal is taken.
 {¶ 21} The Four Assignments of Error of Republic are:
 {¶ 22} "I. THE TRIAL COURT ERRED IN ITS JUDGMENT ENTRY BY FAILING TO SO DISPOSE OF THE MATTERS AT ISSUE BETWEEN THE PARTIES THAT ALL INTERESTED PARTIES ARE ABLE TO DETERMINE WITH REASONABLE CERTAINTY THE EXTENT TO WHICH THEIR RIGHTS AND OBLIGATIONS HAVE BEEN DETERMINED.
 {¶ 23} "II. THE TRIAL COURT ERRED IN ADMITTING PAROL EVIDENCE REGARDING THE TERMS OF AN UNAMBIGUOUS AND FULLY INTEGRATED CONTRACT.
 {¶ 24} "III. THE TRIAL COURT ERRED IN DENYING REPUBLIC'S REQUEST FOR A DECLARATION THAT THE PARTIES' AGREEMENT HAS TERMINATED DUE TO PASSAGE OF TIME AND ABANDONMENT.
 {¶ 25} "IV. THE TRIAL COURT ERRED BY IMPROPERLY CONSTRUING THE AGREEMENT AND IN ISSUING A DECLARATORY JUDGMENT WHICH IMPOSES OBLIGATIONS ON REPUBLIC SERVICES BEYOND THOSE SET FORTH IN THE PARTIES' AGREEMENT."
 {¶ 26} The cross Assignments of Error of Club 3000 are:
 {¶ 27} "I. THAT THE TRIAL COURT'S DETERMINATION AND DECISION THAT THE PLAINTIFF/APPELLEE-REPUBLIC SERVICES OF OHIO'S ACTIONS IN OBTAINING AN OHIO EPA PERMIT FOR LANDFILL EXPANSION AND PROCEEDING WITH EXPANSION OF THE EXISTING COUNTYWIDE LANDFILL FACILITY TO A SIZE AND STORAGE CAPACITY MORE THAN TEN (10) TIMES THAT OF THE ORIGINALLY PERMITTED LANDFILL AND WHICH WILL HAVE AN OPERATIONAL LIFE FOUR (4) DECADES OR MORE LONGER THAN THE ORIGINALLY AGREED UPON LANDFILL, DID NOT CONSTITUTE ENFORCEABLE VIOLATION OF THE OCTOBER 9, 1990 SETTLEMENT AGREEMENT ENTERED BETWEEN CLUB 3000 AND THAT OWNERS OF THE LANDFILL IN QUESTION REQUIRING ISSUANCE OF INJUNCTIVE RELIEF TO PREVENT SAID EXPANSION, WAS ERRONEOUS BECAUSE SUCH DETERMINATION AND DECISION IS AGAINST THE WEIGHT OF THE EVIDENCE AS ESTABLISHED BY THE RECORD AND IS ALSO CONTRARY TO THE FINDINGS OF FACTS MADE BY THE TRIAL COURT.
 {¶ 28} "II. THAT, IN PARTICULAR, THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT/APPELLEE-CLUB 3000 HAD WAIVED THE RIGHT TO SEEK TO ENJOIN AND PREVENT EXPANSION OF THE LANDFILL AS BEING A VIOLATION OF THE OCTOBER 9, 1990 SETTLEMENT AGREEMENT BETWEEN THE PARTIES, BY VIRTUE OF OR BASED UPON THE DEFENDANT/APPELLEE-CLUB 3000'S FAILURE TO APPEAL AN EARLIER FAR LESS EXTENSIVE EXPANSION OF THE COUNTYWIDE LANDFILL WHICH WAS GRANTED IN 1995."
 I. {¶ 29} The First Assignment of Error of Appellant asserts that the trial court did not address the alternative counts in its complaint, i.e., the claim relating to Appellee's violations of OSHA regulations and Appellant's health and safety policies, abuse of Appellant's employees during inspections and also the cause of action for defamation in Count III.
 {¶ 30} Based upon this, Appellant states that the parties are not able to discern the extent of their rights and obligations.
 {¶ 31} The absence of a ruling by the court on these respective issues has not been addressed by a response of Appellee-Cross Appellant.
 {¶ 32} We agree that the trial court's decision omits conclusions relative to these issues but disagree that the parties do not know with sufficient certainty their rights and obligations as expressed in the judgment entry.
 {¶ 33} Since these issues are clearly subordinate to the contractual issues of the case and affect substantial rights under R.C. 2505.02, in the interest of judicial economy, we shall retain jurisdiction to discuss the primary issues raised by the parties, rather than treating this as a non-final appealable order and will remand the unanswered claims to the trial court for ultimate determination.
 {¶ 34} Therefore, we sustain the First Assignment of Error in this regard and will, as stated, order a remand thereto, but deny such Assignment as it relates to jurisdiction and lack of a final appealable order.
 II. {¶ 35} The Second Assignment of Error speaks of the admission of parol evidence.
 {¶ 36} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court and that court's ruling as to such matters will not be reversed absent an abuse of discretion. See: Krischbaum v. Dillon (1991), 58 Ohio St.3d 58,66; Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271.
 {¶ 37} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 38} We agree with the law provided by Appellant relative to an integrated contract, which the trial court found this contract to be, such as that referenced in Galmish v. Cicchini
(2000), 90 Ohio St.3d 22, Charles A. Burton, Inc. v. Durkee
(1952), 158 Ohio St. 313, and Ed Schory Sons, v. SocietyNational Bank (1996), 75 Ohio St.3d 433.
 {¶ 39} The court also found the subject contract to be unambiguous.
 {¶ 40} However, we disagree with Appellant's conclusions as to the Findings of Fact Nos. 3 and 12. Number 3 is not an interpretation of the contract but merely background which was not utilized in the court's conclusions. Also, No. 12 of the Facts found does not state that the area could not be expanded.
 {¶ 41} While there was some parol evidence introduced by Appellee and Appellant, we find that such was not prejudicial to Appellant, particularly when the court specifically stated:
 {¶ 42} "Because the Agreement is an integrated contract, bothGalmish v. Cicchini (2000), 90 Ohio St.3d 22, and the parole [SIC] evidence rule bar Defendant's attempt to prove prior to contemporaneous oral agreements contrary to the terms of the Agreement."
 {¶ 43} We therefore reject the Second Assignment as no abuse of discretion occurred in this regard.
 III {¶ 44} The Third Assignment asserts error as to whether Appellee abandoned the contract.
 {¶ 45} Essentially, the court found that the actions of Appellant controverted this contention.
 {¶ 46} Findings of Fact Nos. 17, 27 and 33 and Conclusions of Law Nos. 10 and 12 state:
 {¶ 47} "17. During the years 1992, 1993, and 1994, Waste Management provided Club 3000 with notice of its intent to expand and copies of its supporting materials describing its application to expand the 1989 Facility.
 " * * * * {¶ 48} "27. Prior to 1999, Waste Management periodically forwarded documents to Marie Burleson or to Dick Harvey as provided in the Agreement.
 " * * * * {¶ 49} "33. That for more than four years after the transaction and transfer of ownership which occurred on or about March 4, 1999, and continuing until the time that Republic Services of Ohio II, LLC recently obtained its Permit for a gross expansion of the Countywide Landfill, Republic Services of Ohio II LLC continued to recognize the existence of and to honor and comply with the Stipulation and Settlement Agreement at issue in this case."
 {¶ 50} Nos. 10 and 12 of the Conclusions of Law state:
 {¶ 51} "The Plaintiff is a successor in interest which is subject to the obligations to comply with the Stipulation and Settlement Agreement entered into between Club 30000 and the initial landfill owners on October 9, 1990, because the Plaintiff has assumed the obligations to comply with such Stipulation and Settlement Agreement. Also such obligation has been affirmed and assumed by the Plaintiff's acknowledgement of and compliance with the Agreement for some four (4) years after its acquisition of the landfill in March of 1999.
 " * * * * {¶ 52} "12. Republic expressly and impliedly assumed those obligations expressly set forth in the written Agreement by virtue of its continuance of performance of the Agreement after its purchase of the facility in 1999."
 {¶ 53} Clearly, the court determined that, from the evidence, the legal application of reasonable time limits and abandonment were inapplicable.
 {¶ 54} This Finding differs from application of the inspection and other contractual rights being applicable to any expansion of the landfill, which will be addressed under the Fourth Assignment.
 {¶ 55} We are not required to make a factual determination as to the possible termination of the contract rights with respect to the initial landfill when such is no longer useable.
 {¶ 56} The Third Assignment is rejected.
 IV {¶ 57} The Fourth Assignment questions the court's construction of the stipulated agreement to expansion of the landfill.
 {¶ 58} The court's Findings of Fact and Conclusions are inconsistent in this regard in that it is stated in the Findings of Fact No. 4:
 {¶ 59} "The landfill as described in the application for Permit to Install which was incorporated by reference in the Permit (PTI) ultimately issued specified the surface area of the landfill to be eighty (80) acres, the capacity of the landfill to be approximately seven million five hundred thousand (7,500,000) cubic yards, the operational life of the landfill to be approximately seventeen (17) years based upon the original rate of expected daily fill. It also specified the maximum height of the landfill."
 {¶ 60} Also, at No. 10, the court referenced the specifications, parameters, terms and conditions of the permit "as existing on the date of the Settlement Agreement".
 {¶ 61} In No. 14, the court found as to the contractual understanding of the parties:
 {¶ 62} "There is no indication in the Agreement between the parties that it was contemplated or understood by the parties that the landfill owners could subsequently take action to build an expanded landfill on the same site, enlarging the stipulated and agreed upon landfill to a size more than ten (10) times the original size, being more than two hundred (200) feet beyond the original height, and having an operational capacity extending the operational life by two (2) to four (4) decades nor was such action prohibited by the content of the agreement."
 {¶ 63} But, as stated previously, the court found the agreement to be an integrated contract and at No. 15, determined:
 {¶ 64} "The Agreement sets forth the entire agreement between the parties."
 {¶ 65} In contrast, at the Conclusions of Law, at Nos. 14 and 15, the court found:
 {¶ 66} "14. The rights to observe, inspect, and investigate as set forth in Section II, paragraph 1 of the Agreement do not relate only to the 80 acres, approximately 6 m.c.y. capacity site referred to in the 1989 PTI and does extend to any additional acreage owned by Countywide Landfill, Inc. or now owned by Republic.
 {¶ 67} "15. When the acreage and capacity of the 1989 PTI are filled, Club 3000's rights to observe, inspect and investigate do not terminate."
 {¶ 68} While the parties, in executing the Settlement Agreement could have specifically provided that the terms thereof would continue and apply as to land subsequently utilized for landfill expansion, they did not.
 {¶ 69} The court found such contract to be unambiguous and fully integrated.
 {¶ 70} As a result, the court could not insert terms not therein contained.
 {¶ 71} A prohibition exists as to introduction of evidence or prior or contemporaneous agreements between the parties to a written contract to alter its terms when the contract is fully integrated and expresses the entire agreement between the parties. Ed Schory Sons, Inc. v. Francis (1996), 75 Ohio St.3d 433,440,662 N.E.2d 1074.
 {¶ 72} Courts may not stretch or constrain unambiguous provisions to reach a result clearly not sought by the parties. Where the contract is clear and unambiguous within its four corners, courts cannot alter the provisions. See Rose v. NewYork Life Ins. Co. (1933), 127 Ohio St. 265, 187 N.E. 859;Whitley v. Canton City School Dist. Bd. of Edn. (1988),38 Ohio St.3d 300, 528 N.E.2d 167; Kaplysh v. Takieddine (1988),35 Ohio St.3d 170, 519 N.E.2d 382; Lockshin v. Blue Corss ofNortheast Ohio (1980), 70 Ohio App.2d 70, 24 O.O.3d 80,434 N.E.2d 754; Harris v. Elofskey (1989), 65 Ohio App.3d 342,583 N.E.2d 1344.
 {¶ 73} In Inland Refuse Transfer Co. v. Browning-FerrisIndustries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322, the Ohio Supreme Court held:
 {¶ 74} "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241 [7 O.O.3d 403]. However, if a term cannot be determined from the four corners of the contract, a factual determination of intent or reasonableness may be necessary to supply the missing term. Hallet Davis Piano Co. v. Starr PianoCo. (1911), 85 Ohio St. 196."
 {¶ 75} Furthermore, while circumstances surrounding the parties when a contract is entered into may be proven in order to enable the court to put itself in the place of the parties, such circumstances may not contradict or vary the contract. Rorick v.Gilbert (1931), 45 Ohio App. 96. Frankland v. Hawkins (Nov. 8, 1999), Columbiana App. No. 98-CO-5.
 {¶ 76} We therefore sustain the Fourth Assignment of Error as the court, contrary to the Findings of Fact, enlarged the terms of the contract to apply to land not within the landfill at such time.
 {¶ 77} While we recognize the desires of Club 3000 in this regard, neither this Court or the trial court can re-make the contract to suit its present wishes.
 {¶ 78} We find that the contract is inapplicable to the land encompassed within expansions of the landfill.
 {¶ 79} The contract does not, as the court stated, prohibit expansions nor does it prevent Appellee from pursuing objections to expansion with the Ohio Environmental Review Appeals Council as the court found it is doing in Findings of Fact No. 31.
 Cross-Appeal {¶ 80} Cross-Appellee's First Assignment of Error maintains that the decision determining that the expansion of the landfill was not a violation of the settlement agreement was against the manifest weight of the evidence.
 {¶ 81} In reviewing the records to the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and draw all reasonable inferences, consider the credibility of the witnesses and determine Awhether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. State v. Martin (1983),20 Ohio App.3d 172. Because the trier of fact is in a better position to observe the witnesses= demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230.
 {¶ 82} Because of our ruling as to the Fourth Assignment of Error, this First Cross Assignment is moot and is rejected.
 {¶ 83} Also, the findings by the court relative to waiver as expressed in the Second Cross Assignment of Error, is also moot and is denied.
 {¶ 84} This cause is affirmed in part and reversed in part.
Boggins, P.J. Gwin, J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part and reversed in part.
Costs to Appellant.