LEISKE, Appellant, vs. BAUDHUIN YACHT HARBOR, INC.,
Respondent.

*April 10—May 6, 1958.*

For the appellant there was a brief by *Rubin, Ruppa & Wegner,* attorneys, and *Nathan Ruppa* and *Norman W. Wegner* of counsel, all of Milwaukee, and oral argument by *Nathan Ruppa.*

For the respondent there was a brief by *Clark, Rankin, Nash, Emmerling & Spindler* of Manitowoc, and oral argument by *John P. Nash.*

WINGERT, J. The judgment will be affirmed.

1. *Finding as to inducement.* Appellant's first contention is that there is no credible evidence to support the jury's answer to question 12, that the plaintiff was not materially induced to accept delivery of the boat by Baudhuin's false representation and reliance thereon. The false representation found by the jury was that the boat was in good condition as respects dry rot except for the places which plaintiff and Spude had seen and which Baudhuin undertook to repair for $2,500.

Plaintiff had the burden of convincing the jury that the representation in question induced him to accept and pay for the boat. To warrant the court in changing the jury's finding that he was not so induced, he would have to show that the evidence permits of no other conclusion than that he was so induced, at least in material part.

We agree with the trial court that the jury's finding may stand. There is credible evidence to the effect that plaintiff bought for $11,500 a boat that would have cost $125,000 or more new, at prices prevailing at the time of sale; that plaintiff was told at the time that another person who had contemplated buying the boat planned to spend $28,000 on reconditioning it; that Baudhuin recommended to plaintiff that he have a survey made of the boat; that plaintiff made no serious effort to obtain a survey; and that plaintiff had before him Spude's $5,000 estimate of the cost of repairing the dry rot that had already been seen. Plaintiff nevertheless contented himself with an inspection which his own counsel characterized as casual. In our opinion this and other evidence warranted the jury in inferring that plaintiff knew he was taking a chance on the condition of the boat and that he was induced to buy it by the very low price, less than 10 per cent of what the same boat would cost new.

Skepticism on the part of the jury with respect to plaintiff's credibility may have arisen, and quite understandably, from

admissions by him that before paying the $11,500 he arranged with the defendant to treat $2,500 as rental of the boat for one month (during which it was in defendant's possession) and only $9,000 as purchase price, and that he then used those unrealistic figures to obtain tax advantages in his income-tax and property-tax returns.

2.  *Admission of evidence.*  Appellant contends that prejudicial error was committed in the reception of evidence, over objection, that plaintiff was told at the outset that another prospective purchaser of the Cherry Queen intended to spend $28,000 in reconditioning the vessel, that equipment on the boat had a list price new of $16,000, and that at 1956 prices the same boat new would cost $125,000 or more.

The evidence was properly admitted.  The testimony that it was brought to plaintiff's attention that another prospective purchaser expected to spend $28,000 on reconditioning was relevant as a warning to plaintiff that he could not expect to put the boat in good condition for $2,500.  While the Cherry Queen and its equipment were old, the cost of replacing boat and equipment at current prices was material and relevant on the issue of inducement, tending to show that plaintiff was getting such a big discount on the boat that he could not have reasonably expected to obtain a boat in good condition, and that it was not Baudhuin's false representation about the dry rot that induced him to buy.  To quote the learned trial judge in a colloquy at the trial, "If you sell an old car, that was expensive when new, for a few hundred dollars, or, say, one hundred dollars or less, you immediately have the question : Is there a likelihood of that type of vehicle being in good condition as against a relatively new car?"

3.  *Finding as to what inspection should have revealed.*  Appellant challenges the jury's answer to question 5, that the inspection made by Spude and plaintiff, if reasonably made, should have revealed more dry rot than they discovered, and contend that it is not supported by credible evidence.  We

think the finding clearly sustained. When a casual surface inspection by one unfamiliar with boats revealed dry rot which a boatbuilder estimated would cost $5,000 to repair it was well within the province of the jury to consider that any reasonable persons inspecting the boat would have looked further and would have found more dry rot, since they had only to look under the carpet to find plenty of it. Plaintiff had the privilege of inspection before acceptance and payment; he had a month and a half for that purpose, and defendant recommended that he have a survey made; but plaintiff did no more to that end than has been mentioned. The jury could well infer that he did not take reasonable steps to protect himself.

4. *Form of special verdict.* The special verdict is said to have been defective because it contained no question whether or not the defendant's false representations were made with intent to defraud. Appellant is in no position to complain of that defect, if defect it were, because plaintiff made no timely request for such a question, and in fact expressed to the court satisfaction with the form of the verdict before its submission to the jury, except with respect to a different question. Objection to the omission of a question on intent was thereby waived. *Johnson v. Sipe,* 263 Wis. 191, 198, 56 N. W. (2d) 852.

Were it otherwise, we cannot see how the omission of a question on the seller's intent could have prejudiced the plaintiff, since the jury found that the misrepresentation did not induce plaintiff to accept the boat.

*By the Court.*—Judgment and order affirmed.

HALLOWS, J., took no part.