# NORTHWESTERN NATIONAL INSURANCE CO., Plaintiff,

v.

## Walter A. NEMETZ, Hazel M. Nemetz, Defendants,

## AUTO-OWNERS INSURANCE CO.,† Defendant-Co-Appellant and Cross-Respondent,

## GERMANTOWN MUTUAL INSURANCE CO.,† Defendant-Appellant,

## Evelyn M. NELSON and Robert Nelson, d/b/a Nelson's Grocery, Defendants-Third-Party Plaintiffs-Respondents and Cross-Appellants,

## CRANDON INSURANCE CENTER, Third-Party Defendant,

## UTICA MUTUAL INSURANCE CO., Third-Party Defendant and Cross-Respondent.

Court of Appeals

*No. 85–1762. Orally argued October 6, 1986.—Decided November 18, 1986.*

(Also reported in 400 N.W.2d 33.)

† Petition to review denied.

247

248

For defendant-appellant, Germantown Mutual Insurance Co., there were briefs and oral argument by *Dennis J. Verhaagh* of Green Bay.

For defendant-co-appellant and cross-respondent, Auto-Owners Insurance Co., there were briefs and oral argument by *Michael G. Grzeca* of *Everson, Whitney, Everson & Brehn, S.C.* of Green Bay.

For defendants-third-party plaintiffs-respondents and cross-appellants, Evelyn M. Nelson, Robert Nelson, d/b/a Nelson's Grocery, a brief was submitted by *Ronald S. Aplin* of *Johnson, Weis, Paulson & Priebe, S.C.* of Rhinelander. Oral Argument by *D. J. Weis*.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.    Germantown Mutual Insurance Company and Auto-Owners Insurance Company appeal a judgment awarding damages to Evelyn and Robert Nelson. Germantown and Auto-Owners contend that the trial court erred by construing their property insurance policies to afford liability coverage to Hazel Nemetz, whose husband, Walter, allegedly intended or expected the burning of a structure occupied by the Nemetzes' tavern and the Nelsons' adjoining hardware store. Auto-Owners and Germantown also claim other errors, including improper closing arguments by counsel, insufficient evidence to support the jury's damage award, and the trial court's refusal to allow certain special verdict questions and to give certain proposed jury instructions.

The Nelsons cross-appeal, arguing that the trial court erred by changing a special verdict question finding that Walter Nemetz had not intended or expected the damage to the Nelsons' property. We conclude that the Auto-Owners and Germantown policies afford liability coverage to Hazel regardless of her husband's culpability and that the trial court correctly formed the special verdict and properly instructed the jury. We therefore need not address issues concerning Walter's

250

intent. Furthermore, we conclude that credible evidence supports the damage award. Accordingly, we affirm the trial court's judgment and order.

## FACTS

The issues demand a detailed review of the facts. In the summer of 1980, Walter Nemetz gave a man $600 and a shotgun after proposing the idea of burning the Nemetzes' tavern in the Town of Newald, Wisconsin. The scheme languished for several months while the Nemetzes wintered in Florida, until Walter directed Hazel to write the man and urge him to perform the arson before the Nemetzes returned to Newald. Hazel renewed the couple's liability policy with Germantown in May, 1981, after she knew of Walter's plan. The couple was also insured under a separate policy with Auto-Owners. Despite the letters to the prospective arsonist, however, the Nemetzes' tavern stood untouched when the couple returned from Florida in June. On their first day back, Walter told Hazel that he would set the fire himself. Hazel repeatedly argued with him, urging Walter not to burn the tavern.

Several days later, Walter invited their neighbors, the Nelsons, to go out to dinner with them on the evening of June 17, 1981. Despite past conflicts with the Nemetzes, the Nelsons accepted the invitation. The Nelsons owned the hardware store adjacent to the tavern, including the common wall separating the two businesses. Before departing on the evening of the 17th, however, the Nelsons told the Nemetzes that they noticed a strong odor of gasoline coming from the building. Hazel then recalled her discussions with Walter about burning the tavern. The Nelsons summoned local

firefighters, but before they could discover the source of the gasoline fumes, the tavern exploded. Both the Nemetzes' tavern and the Nelsons' hardware store burned to the ground. Walter was hospitalized for burns received when he entered the tavern as it exploded. The others escaped injury.

On July 16, Walter gave a written statement admitting that he had poured gasoline on the tavern's floor on the evening of the fire. He stated that he had intended "that the building would burn when the gasoline fumes became ignited by some means." Hazel witnessed her husband make this statement in his hospital room, and she read it back to him before he signed it. Although all of the parties agreed that the explosion and fire were fueled by the gasoline, the actual cause of ignition was undetermined. In September, Hazel executed a sworn proof of loss statement to Auto-Owners stating that the cause and origin of the loss were undetermined.

The matter came to trial in May, 1985. Neither Hazel nor Walter Nemetz appeared. At the trial's close, in response to a five-part special verdict question,[1] the jury answered that neither Walter nor Hazel intended or expected damages to the Nelsons' property. The jury

---

[1] The special verdict questions ultimately presented to the jury were:

> Question 1: Prior to and at the time of the explosion and fire did Walter A. Nemetz expect or intend to cause damage to the property of the Nelsons?

> Question 2: If you answer question 1 no, then answer this question: Prior to and at the time of the explosion and fire was Walter A. Nemetz negligent with respect to the property of the Nelsons?

> Question 3: Prior to and at the time of the explosion and fire did Hazel M. Nemetz expect or intend to cause damage to the property of the Nelsons?

also found that both Walter and Hazel were negligent with respect to the Nelsons' property. Because of its negative answers to both intent questions, the jury did not answer question five. Question five required a finding regarding Hazel's involvement in a conspiracy to set the fire only if the jury found intent on Walter's part, but not Hazel's. Following motions after verdict, the trial court changed the jury's answer to the question of Walter's intent, holding that no credible evidence supported the jury's finding that Walter did not intend or expect the damage to the Nelsons' property.

The trial court supplied an answer to the conspiracy question, finding that the record showed no evidence of a conspiracy on Hazel's part regarding the setting of the fire. The trial court granted the Nelsons a judgment of $80,000, representing the $50,000 already paid by the Nelsons' insurer and $30,000 for loss of personal property.

## POLICY CONSTRUCTION

Auto-Owners argues that the trial court erred by finding liability coverage for Hazel Nemetz under its policy. Auto-Owners relies on an exclusion for liability for damage expected or intended by *an* insured.[2] Thus,

---

Question 4: If you answer question 3 no, then answer this question: Prior to and at the time of the explosion and fire was Hazel M. Nemetz negligent with respect to the property of the Nelsons?

Question 5: If you answer question 1 yes and question 3 no, then answer this question: Did Hazel M. Nemetz enter into a conspiracy with Walter A. Nemetz regarding the setting of the fire?

[2] The Auto-Owners policy, issued in the name of Hazel M. Nemetz, contained the following applicable provisions:

Auto-Owners contends that its policy affords Hazel no coverage because the trial court found that Walter, "an insured," intended or expected the damage. We conclude that when read together with the "severability of interest" clause, Auto-Owners' intentional acts exclusion is ambiguous. Thus, the Auto-Owners policy affords liability coverage for Hazel regardless of any intentional acts on Walter's part.

We may not modify the unambiguous language of an insurance policy. *State Farm Mutual Automobile Insurance Co. v. Rechek*, 125 Wis. 2d 7, 9, 370 N.W.2d 787, 789 (Ct. App. 1985). However, where an ambiguity

DEFINITIONS.

"You" and "your" mean the insured named in the Declarations and his or her spouse if living in the same household. . . .

COVERAGE E—PERSONAL LIABILITY.

We will pay all sums which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this policy.

CONDITIONS.

. . .
2. Severability of Interest
This insurance applies separately to each insured person against whom a claim or suit is brought, subject to our limits of liability for each occurrence.

EXCLUSIONS.

Under personal liability coverage . . . we do not cover . . . property damage. . . .

. . .
5. Expected or intended by *an* insured person. [Emphasis added.]

Germantown's policy similarly insured both Nemetzes, contained a "severability of interest" clause, but excluded damages "intended or expected by *the* insured." [Emphasis added.]

254

exists, we must construe the policy against its drafter and in favor of the insured. *Id.* at 10, 370 N.W.2d at 789. An ambiguity exists when the policy is reasonably susceptible to more than one construction from the viewpoint of a reasonable person of ordinary intelligence in the position of the insured. *Hartland Cicero Mutual Insurance Co. v. Elmer*, 122 Wis. 2d 481, 487, 363 N.W.2d 252, 255 (Ct. App. 1984).

Our supreme court concluded that a policy exclusion for an intentional act of *the* insured did not bar liability coverage to the "innocent" spouse of a man who intentionally destroyed the couple's house. *Hedtcke v. Sentry Insurance Co.*, 109 Wis. 2d 461, 488-89, 326 N.W.2d 727, 740 (1982). In *Hedtcke*, a husband intentionally burned down the family's home several days before a divorce order would have compelled him to vacate the house. The insurance policy named both the husband and the wife and excluded coverage for hazards "increased by any means within the control or knowledge of *the* insured." *Id.* at 480, 326 N.W.2d at 736 [emphasis added]. The *Hedtcke* court construed the policy to provide separate coverage for the interests of each insured. The *Hedtcke* court applied the "reasonable insured" standard to arrive at this construction, stating that "the person owning an undivided interest in property and being a named insured would reasonably suppose that his or her individual interest in the property was covered by the policy." *Id.* at 487, 326 N.W.2d at 739.

Here, no construction is necessary to determine that Walter and Hazel had separate interests under the Auto-Owners policy. The policy contains a "severability of interest" condition stating: "This insurance applies

separately to each insured person against whom a claim or suit is brought. . . . " Because the *Hedtcke* court found severability of interests, it concluded that the exclusion barring coverage for intentional acts of *the* insured did not operate to eliminate coverage for an "innocent" person who was co-insured under the same policy. The *Hedtcke* court, however, explicitly reserved judgment on whether an insurer could jointly obligate the insureds so that the intentional act of only one would place the other outside the policy's coverage. *Id.* at 487–88, 326 N.W.2d at 740.

*Hedtcke* harmonized the insureds' separate interests with their separate obligations to refrain from intentionally damaging property. Here, however, we face an insurance contract with a severability clause purporting to separate the insureds' interests while the exclusion clause, "we do not cover . . . damage . . . expected or intended by an insured," attempts to join the insureds' obligations. We conclude that this contract is ambiguous because the severability clause creates a reasonable expectation that each insured's interests are separately covered, while the exclusion clause attempts to exclude coverage for both caused by the act of only one. Thus, we must construe the policy against Auto-Owners. We cannot release an insurer from a risk that may have been excluded through more careful contract drafting. *See Kremers-Urban Co. v. American Employers Insurance Co.*, 119 Wis. 2d 722, 743–44, 351 N.W.2d 156, 167 (1984).

Additionally, Auto-Owners argues that affording coverage to Hazel renders the exclusion clause superfluous. We agree that if other things are equal, we must construe a policy to give reasonable effect to every

clause. *See Stanhope v. Brown County*, 90 Wis. 2d 823, 850, 280 N.W.2d 711, 722 (1979). However, this rule does not compel us to give full effect to an ambiguous clause. Moreover, our construction does not render the exclusion superfluous. Under the clause, the policy still affords no liability coverage to any insured who intends or expects damage.

Because the Germantown policy excludes coverage for intentional acts of *the* insured, it clearly cannot exclude Hazel from coverage simply because of Walter's alleged intentional acts. Thus, we conclude that neither policy excludes Hazel's liability coverage.

■

Relying on the *Hedtcke* decision, Germantown argues that public policy considerations compel us to bar Hazel's liability coverage because she was not an "innocent insured." *Hedtcke* noted that many courts have imposed the principle of fortuitousness on insurance contracts. This principle states in effect that regardless of contract language, insurers should not be forced to cover losses that are not fortuitous. *Id.* at 483-84, 326 N.W.2d at 738. The principle rests on the following policies: (1) avoiding profit from wrongdoing; (2) deterring crime; (3) avoiding fraud against insurers; and (4) maintaining coverage of a scope consistent with the reasonable expectations of the parties on matters not expressly discussed. *Id.* at 484, 326 N.W.2d at 738. Germantown reasons that Hazel's actions, while even if not expected or intended, were far from "innocent." Thus, Germantown argues that her tacit involvement in Walter's plot violated the public policies underlying the principle of fortuitousness.

We agree with Germantown's premise that public policy considerations should prevent recovery by an insured who is not innocent with respect to intentional damages. Germantown argues that evidence pointing towards Hazel's involvement in a conspiracy with Walter means that affording coverage to Hazel would violate public policy. Further, Germantown claims that the absence of a fraud question in the special verdict prevented the jury from determining Hazel's lack of innocence. Although the *Hedtcke* court provided no definition for an "innocent insured," we conclude that a finding of fraud or conspiracy to defraud an insurer would dispose of the question of an insured's "innocence." However, because neither Germantown nor Auto-Owners presented this issue to the trial court, they have waived their right to argue that Hazel was not an innocent insured.

Germantown originally proposed a special verdict question relating to Walter's intent to defraud an insurer. Germantown, however, never proposed a question dealing with Hazel's intent to defraud. Moreover, the conspiracy question Germantown originally proposed, as well as the version ultimately put to the jury, dealt with Hazel's involvement in a conspiracy with Walter "regarding the setting of the fire." Although some of Hazel's actions may have supported a conspiracy finding if the hired arsonist had burned the building as Walter originally planned, this scheme was clearly abandoned. The record supports the trial court's finding that there was no credible evidence to support Hazel's involvement in a conspiracy to set the actual June 17th fire. The transcript of the verdict conference reveals

258

that neither Germantown nor Auto-Owners objected to the verdict ultimately submitted to the jury.

Therefore, because the insurers failed to propose at trial the question of Hazel's status as an innocent insured, both parties waived their right to argue this issue on appeal. *See Leiske v. Baudhuin Yacht Harbor, Inc.,* 4 Wis. 2d 188, 193, 89 N.W.2d 794, 797 (1958).

## SUFFICIENCY OF THE EVIDENCE

■

Auto-Owners and Germantown argue that no credible evidence supports the jury's finding that Hazel did not intend or expect the damages to the Nelsons' property. We disagree. Hazel's statements that she had nothing to do with her husband's pouring gasoline in the tavern on the evening of the fire were uncontested. Thus, the jury had credible evidence before it supporting an inference that Hazel neither intended nor expected the fire that destroyed the Nelsons' property. Because credible evidence supports the jury's verdict, we affirm. Section 805.14, Stats.

■

Germantown argues that no credible evidence supports the jury's finding of Hazel's negligence with respect to the Nelsons' property. We disagree. Negligence is the failure to act with reasonable care whenever it is foreseeable that one's conduct may cause harm to another. *Walker v. Bignell,* 100 Wis. 2d 256, 263, 301 N.W.2d 447, 452 (1981). When Mrs. Nelson noted the smell of gas, Hazel recalled her husband's plan to burn their tavern. Hazel also smelled the gasoline fumes. Nevertheless, she failed to warn anyone at the scene of the potential danger to lives or property. Thus, the jury

could have found that Hazel foresaw her husband's plan and failed to warn of the dangers. This knowledge supports a finding of negligence on Hazel's part. *See Morgan v. Pennsylvania General Insurance Co.*, 87 Wis. 2d 723, 732, 275 N.W.2d 660, 664-65 (1979). Thus, the trial court correctly upheld the jury's answer to the question on whether Hazel was negligent in regard to the damages to the Nelsons' property.

The Nelsons argue that the trial court erred when it changed the jury's verdict from "no" to "yes" on the question of whether Walter intended or expected the damages to the Nelsons' property. Because we construe the policies to afford liability coverage to Hazel regardless of her husband's state of mind, issues of Walter's intent are not dispositive of this appeal. Thus, we need not address them. *See Lepak v. Mutual Automobile Insurance Co.*, 262 Wis. 1, 5, 53 N.W.2d 710, 712 (1952).

## DAMAGES

Germantown argues that the jury's $30,000 award to the Nelsons for personal property lost in the fire was speculative and should thus be set aside. Germantown contends that because the Nelsons failed to give their opinions as to the fair market value of all but one item on a list of possessions lost in the fire, no reliable basis existed for the damage award. Because we conclude that the evidence was sufficient to prove damages, we uphold the jury's award.

The Nelsons, who lived in the second story of the hardware store, salvaged nothing from the destroyed building. They collaborated in making a list of their personal belongings. This list included the nature, condition, and age of each item of personal property, as well

as each item's replacement cost as determined from recent catalog prices for identical items. The list excluded family legacies, antiques, and items of sentimental value. At trial, the Nelsons introduced uncontroverted testimony by an independent adjuster who estimated that the total value of the items on the list had depreciated to 65–70% of their replacement cost. Seventy percent of the replacement value for the entire list was approximately $30,000, the amount the jury awarded in damages for lost personal property.

Germantown argues that the damage award is flawed because the Nelsons failed to give their opinion on the value of each item. Although Wisconsin law permits owners to testify as to the value of their possessions, nowhere does it require the owners' opinion to establish fair market value. *See Trible v. Tower Insurance Co.*, 43 Wis. 2d 172, 186–87, 168 N.W.2d 148, 156 (1969). Replacement cost minus depreciation is a permissible method of arriving at the fair market value of lost property. *Schwalbach v. Antigo Electric & Gas, Inc.*, 27 Wis. 2d 651, 661, 135 N.W.2d 263, 268 (1965). The *Schwalbach* court noted that this method was evidentiary, not conclusive. *Id.* But because neither Germantown nor Auto-Owners challenged this evidence, the jury had nothing else to guide it. Because the court properly allowed the jury to infer fair market value by subtracting estimated depreciation from replacement value, the jury properly found a fair market value of $30,000. We will not overturn a jury verdict supported by credible evidence. Section 805.14, Stats.

Auto-Owners argues that Hazel Nemetz voided its policy because she made a material misrepresentation on a proof of loss form. The record shows that Hazel witnessed her husband's hospital room statement where he admitted pouring gasoline in the tavern immediately before the explosion and fire. Auto-Owners argues that when Hazel later signed a proof of loss form on which she stated the origin of the fire was unknown, she violated the policy term prohibiting an insured person from intentionally concealing or misrepresenting any material fact relating to the insurance. We disagree.

An insurer must show materiality in order to avoid coverage because of misrepresentation. *See Nolden v. Mutual Benefit Life Insurance Co.*, 80 Wis.2d 353, 360, 259 N.W.2d 75, 78 (1977); sec. 631.11(2), Stats. A misrepresentation is not material if it did not invoke the insurer's reliance. *See* sec. 631.11(2), Stats. The materiality of a misrepresentation is a question of fact that must be presented to the jury. *Nolden*, 80 Wis.2d at 360, 259 N.W.2d at 78. Auto-Owners did not argue that it relied on Hazel's statement. The insurer knew of Walter's admission as well as the investigators' theories as to the cause of the blaze.

## CONDUCT OF TRIAL

### CLOSING STATEMENT

Auto-Owners and Germantown contend that they were prejudiced by counsel for the Nelsons' closing statement urging the jury not to "hurt the Nelsons" in

their special verdict answer to the question of Walter's intent.[3] It is reversible error for either the court or counsel to inform the jury of their answer's effect on the ultimate result of the verdict. *McGowan v. Story*, 70 Wis. 2d 189, 196, 234 N.W.2d 325, 328 (1975). We need not decide, however, whether counsel's argument improperly influenced the jury in its answer to the question regarding Walter's intent. We have already concluded that Walter's intent is irrelevant to the disposition of this appeal. Moreover, we have concluded that the jury's answer to the question concerning Hazel's intent was supported by credible evidence. Thus, Germantown and Auto-Owners have failed to show that counsel's statement has prejudiced them. Accordingly, we find no grounds for ordering a new trial.

## JURY INSTRUCTIONS

Auto-Owners argues that the trial court erred by refusing to give certain jury instructions. We conclude that the trial court did not abuse its discretion in refusing to give the proposed instructions.

The trial court has wide discretion in giving jury instructions based on the facts and circumstances of each case. *State v. Kemp,* 106 Wis. 2d 697, 705, 318 N.W.2d 13, 18 (1982). If the trial court's instructions

---

[3] During his closing statement, counsel for the Nelsons argued:

He [Walter Nemetz] went back [into the tavern before the explosion] to stop anything he put in progress. That was his intent. That's what the [special verdict] question asks you. Don't answer that question out of anger. *Don't hurt the Nelsons and answer that question out of anger.* Instead answer it rationally by looking at the facts. [You are] [n]ot going to hurt Mr. Nemetz one way or another regardless of how you folks answer those questions. [Emphasis added.]

adequately cover the law, we will not find error in its refusal to give a certain instruction, even where the proposed instruction is not erroneous. *Id.* at 706, 318 N.W.2d at 18.

Auto-Owners challenges the trial court's refusal to give four particular instructions. First, Auto-Owners contends that the trial court erred in refusing to instruct the jury that it could infer from the Nemetzes' absence that their testimony would have been unfavorable to the Nemetzes. *See* Wis JI—Civil 410 (1985). Second, Auto-Owners challenges the trial court's refusal to give an instruction that Hazel's failure during discovery, to contradict authorities' adverse statements, was evidence of the statements' truth. Third, Auto-Owners claims that the trial court erred in refusing to give an instruction on circumstantial evidence. Wis JI—Civil 230 (1982). Finally, Auto-Owners claims error in the trial court's refusal to give an instruction that would allow Walter's intent to be inferred if the jury found that a reasonable person would believe that the damage to the Nelsons' property was "substantially certain" to follow from pouring gasoline on the floor of the tavern.

The trial court's failure to give the first three of these instructions was not an abuse of its discretion because none of them was directly required to cover the law of the case. Although Auto-Owners properly asserts legal grounds that would arguably render these instructions proper, the trial court was within its discretion to refuse to give them. Furthermore, Auto-Owners was free to argue the effect of the Nemetzes' absence, Hazel's silence, and the meaning of circumstantial evidence before the jury. We note that because Auto-Owners could and did argue these points to the jury, it was not

264

prejudiced. We therefore uphold the trial court's refusal to give the first three instructions.

The final proposed instruction, dealing with intent, goes directly to an element of the case. A trial court abuses its discretion if it fails to instruct on an issue that finds support in the evidence. *Lutz v. Shelby Mutual Insurance Co.*, 70 Wis. 2d 743, 750, 235 N.W.2d 426, 431 (1975). Here, however, the trial court did instruct the jury that damage to the Nelsons' property had to be intended or expected with a "high degree of certainty." Auto-Owners cites *Pachucki* for the proposition that intent may be found where the actor believed damages were "substantially certain" to follow from his or her actions. *Pachucki*, 89 Wis. 2d at 410, 278 N.W.2d at 902. Although Auto-Owners asserts that a "high degree of certainty" is a significantly stricter standard than the proposed "substantial certainty," it fails to cite convincing or binding authority for this assertion. Before we can find misdirection of the jury, we must be convinced from the entire record that the trial's result would probably have differed. *See Bohlman v. American Family Mutual Insurance Co.*, 61 Wis. 2d 718, 729, 214 N.W.2d 52, 58–59 (1974). Because we determine that the difference, if any, between the two standards would have had no effect on the trial's outcome, we uphold the trial court's version of the intent instruction.

*By the Court.*—Judgment and order affirmed.