**ILLINOIS UNION INSURANCE COMPANY, Plaintiff–Appellant/Cross–Appellee,**

v.

**Robert C. SHEFCHUK, Defendant–Appellee/Cross–Appellant,**

**Illinois Union Insurance Company, Plaintiff–Appellee,**

v.

**Kathleen A. Shefchuk, as Executrix of the Estate of Gregory D. Shefchuk, Defendant–Appellant.**

**Nos. 02–3698, 02–3767 and 02–3714.**

United States Court of Appeals, Sixth Circuit.

Aug. 17, 2004.

---

Mark E. Staib, Hahn, Loeser & Parks, Cleveland, OH, J. Randolph Evans, Brian M. Harris, McKenna, Long & Aldridge, Ida Patterson Dorvee, Arnall, Golden & Gregory, Atlanta, GA, for Plaintiff–Appellant Cross–Appellee.

Daniel F. Gourash, Robert D. Anderle, Howard G. Strain, Porter, Wright, Morris & Arthur, Cleveland, OH, for Defendant–Appellee Cross–Appellant.

Before: SILER, DAUGHTREY, and GIBBONS, Circuit Judges.

PER CURIAM.

These three appeals result from litigation involving similar professional liability policies issued by and to the same parties, and they raise similar issues regarding the duty of the plaintiff, Illinois Union Insurance Company, to defend Robert Shefchuk and the estate of his son, Gregory Shefchuk, in various individual actions alleging the loss of thousands of dollars in investments due to the negligence and/or the misdeeds of the Shefchuks in their capacity as financial advisers. In the first appeal, Illinois Union challenges the district court's grant of partial summary judgment to defendant Robert Shefchuk, holding that Illinois Union had a duty to defend in ten of the underlying actions. In the second, Robert Shefchuk cross-appeals, arguing that the district court should have found a duty to defend in an additional action. In the third and last appeal, Gregory Shefchuk's estate challenges the court's grant of summary judgment to Illinois Union, arguing that the court erred in holding that the plaintiff had no duty under the policy to the estate in the underlying actions.

We conclude that the district court's resolution of the issues now before us was largely correct and affirm on all but one ruling.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1997, Illinois Union issued professional liability policies to Money Concepts

Capital Corporation and its affiliate, RCS Financial Services. Covered as "insureds" under these policies were Robert Shefchuk and his son, Gregory Shefchuk, who were registered representatives of Money Concepts, a financial services brokerage firm, and shareholders in RCS Financial Services, an investments advisory firm. Beginning in April 1998, some two dozen lawsuits were filed and arbitrations initiated against the Shefchuks, Money Concepts, and RCS Financial Services. The common thread in these underlying actions was a series of allegations that clients of the Shefchuks had lost their investments through the Shefchuks' negligence or fraud or both. In May 1998, a month after the allegations of fraud and mismanagement came to light, Gregory Shefchuk committed suicide. A few months later, RCS Financial Services declared bankruptcy.

When, in response to the individual lawsuits, Robert Shefchuk and Gregory Shefchuk's estate sought coverage under the Illinois Union policies, Illinois Union filed this action in federal court, seeking a declaratory judgment that it had no duty to defend or indemnify either Robert Shefchuk or his son's estate under the policy issued to RCS Financial Services and, alternatively, requesting rescission of the policy, on the ground that Gregory Shefchuk had concealed existing and potential claims against him when he applied for the policy. Robert Shefchuk counter-claimed, alleging that Illinois Union had breached the terms of its contracts when it failed to defend him in the underlying actions, as required by the policy issued to RCS Financial Services and by a second policy issued to Money Concepts.

The "broker-dealer financial services professional liability insurance policy" issued to Money Concepts—the specific policy at issue in this case—covered actions for "wrongful acts" committed by the named insured and its representatives. "Wrongful act" was defined in the policy as "any negligent breach of duty, error, misstatement, misrepresentation, omission, 'publication injury' or other negligent act done or attempted by an insured, or by any person for whose acts the insured is legally responsible." The policy covered each individually named registered representative of the named insured for actions "arising out of or in the course and scope of his/her duties as a 'registered representative.'" The policy also contained a number of exclusions. Among those considered by the district court were the following:

B. Dishonesty Or Fraud/Personal Advantage/Non Public Information. We do not cover claims which arise out of or are contributed to by a "wrongful act" that is committed by or at the direction of an insured and which is dishonest, fraudulent, criminal, malicious or knowingly wrongful. We do not cover claims arising out of the insured gaining any personal profit or advantage to which the insured was not legally entitled....

D. Violation Of Laws, Orders, Or Regulations. We do not cover claims which arise out of a willful violation of any laws, orders, rules or regulations of the United States, or any state, commonwealth, territory, county, subdivision or municipality thereof committed by or at the direction of an insured....

R. Prior Acts/Unnamed Financial Services Professionals Or Registered Representatives. We do not cover claims arising out of: any "wrongful act", or series of "interrelated wrongful acts", of an insured occurring, or the first of which occurred, prior to the insured's "retroactive date": or out of "wrongful act" or series of "interrelated wrongful acts" with respect to which a "written

claim" has previously been presented to us under any predecessor policy. We do not cover "written claims" against an insured which arise out of any "wrongful act" or "interrelated wrongful acts" occurring, or the first of which occurred, prior to the effective date of coverage for said insured under this policy, or any predecessor policy issued by us, if the insured knew or should have known, by consulting his/her/its records or otherwise, that said act, error or omission was likely to result in a claim against the insured....

The policy also included a claims exclusion endorsement that excluded coverage for claims "arising out of ... any incident or fact situation which occurred prior to the effective date of this policy, which is known to an insured, and which may reasonably be expected to result in a claim or suit against an insured." In addition, the policy included the following severability clause:

> More than one person or organization has been named as an insured on this policy. The inclusion of multiple insureds will not affect the rights of any such persons or organizations to be protected by this policy. We will cover each such person or organization just as if a separate policy had been issued to each. However, the inclusion of multiple insureds on this policy will not increase our liability beyond the Limits of Liability....

In disposing of the motions for summary judgment filed by the parties in the action involving Robert Shefchuk, the district court applied Ohio law and separated the underlying actions into three categories: (1) cases that alleged knowing or intentional wrongdoing by Robert Shefchuk or negligence that arose out of such conduct, (2) cases in which it was not clear whether the plaintiff was alleging negligence or an intentional tort on the part of Robert Shefchuk, and (3) cases that alleged negligence on the part of Robert Shefchuk that did not arise out of his wrongful acts. The court held that Illinois Union had no duty to defend Robert Shefchuk in the first category, finding that some of the cases were excluded by the "prior occurrence" exclusion and that others were barred by the second sentence of the "dishonesty" exclusion, involving actions taken for personal gain. The court held that Illinois Union did have to defend Robert Shefchuk in the second and third categories of cases. The parties later stipulated that, as of October 3, 2001, Robert Shefchuk had incurred $237,454.25 in defending the claims against which Illinois Union was found to have a duty to defend and prosecuting his claim against Illinois Union for coverage. The district court entered a final judgment in favor of Illinois Union on five of the underlying actions and in favor of Robert Shefchuk on ten of them.

As to the estate of Gregory Shefchuk, the district court held that Illinois Union had no duty to defend under the policy at issue. Noting that "[i]t is undisputed that Gregory Shefchuk intentionally defrauded his clients through forged withdrawal slips and fraudulent account reports, thereby stealing funds which were not legally his," the court found applicable the exclusion barring coverage for claims "arising out of the insured gaining any personal profit or advantage to which the insured was not legally entitled." It then held that Illinois Union did not have a duty to defend the estate in the underlying actions alleging negligence against the estate because the negligence claims were dependent upon Gregory Shefchuk's excluded acts of unlawful personal profit. As a result, the district court entered final judgment against Kathleen Shefchuk, representing her husband's estate.

Because all of the underlying actions have been settled, the only remaining question concerns Illinois Union's duty to defend. Appealing the district court's order as to Robert Shefchuk, Illinois Union argues, first, that California law, rather than Ohio law, should have been applied to the contract. It also contends that the district court found ambiguities in the contract that were not there, giving the court an excuse to interpret the contract against the insurance company. In particular, Illinois Union claims that the term "an insured" in the exclusions should have been read to refer to any insured under the contract, so that, for example, the dishonesty exclusion would have applied to all claims against Robert Shefchuk—including even the claims of negligence against Robert Shefchuk—because they could be traced back to the dishonest acts of Gregory Shefchuk, who was also insured under the policy. Illinois Union further argues that the first sentence of the dishonesty exclusion should not have been held unenforceable. In his cross-appeal, Robert Shefchuk contends that the district court was wrong in finding that there was no independent claim of negligence in the Savarino suit, which was one of the underlying actions placed by the court in the first category. Finally, the estate of Gregory Shefchuk contends that the district court erred in holding that Illinois Union had no duty to defend Gregory Shefchuk's estate under the policy, because Illinois Union had failed to adduce admissible proof on the record to establish that Gregory Shefchuk had intentionally defrauded his clients as found by the district court.

## *ANALYSIS*

### I. Choice of Law

■ The first question faced by the district court involved a choice-of-law issue raised by Illinois Union, which asserted that the court should apply California law in interpreting the policy issued to Money Concepts, based on a provision entitled "Disputes With Us/Arbitration" that contained the following language:

> By accepting the coverage provided by this policy, the insured agrees to be bound by the following arbitration rules in the event that a dispute arises between the insured and us with respect to coverage, liability for premiums or "deductibles," any term or condition of this policy, or any other matter arising out of the relationship between us and the insured or his/her/its representatives....
>
> 2. In the event of any such dispute, the matter shall be resolved by binding arbitration before three privately selected arbitrators acting pursuant to the arbitration provisions of the California Arbitration Act, Sections 1280 through 1294.2 of the Code of Civil Procedure....
>
> 3. The arbitrators shall apply the law of the State of California....
>
> 5. If any party seeks to avoid these arbitration provisions, and any court shall be asked by either party to make any order concerning any dispute or controversy in any way concerning the matters set forth above, the parties agree that the court shall apply California law. The parties also agree to request the court to abate any such proceeding pending transfer to the courts of California for determination of the validity of these arbitration provisions.

Illinois Union argues that the language in this provision is a general choice-of-law clause, contending that the term "matters set forth above" refers to the topics set out at the beginning of the provision: "dispute[s] ... with respect to coverage, liability for premiums or 'deductibles', any term or condition of this policy...." Any other

interpretation, it argues, would render the second sentence of provision five extraneous. Under this reading, two things would happen in the event of a suit against Illinois Union: (1) the court considering the case would have to apply California law, and (2) the parties would be required to request that the case be transferred to California for a determination of whether arbitration should be compelled.

Robert Shefchuk, on the other hand, argues that the provision is not a general choice-of-law provision, but rather only a requirement that California law be applied in deciding arbitrability issues. Under this reading, the term "matters set forth above" would refer only to the arbitration procedures outlined within the arbitration provision, not to all disputes that could arise under the policy.

The district court noted that this provision in the policy "does not contemplate that a dispute would be litigated in court rather than in arbitration" and "specifically provides that 'the arbitrators' shall apply California law." But the court had already held that Illinois Union waived the right to enforce the arbitration clause when it initiated the federal action. Given its conclusion that the choice-of-law provision applied only to arbitration, the district court therefore chose to apply Ohio law to the merits of the claims before it. We conclude that this decision was correct and, therefore, turn to the substantive issues raised on appeal.

## II. Interpretation of the Policy

We review a grant of summary judgment *de novo.* Under Ohio law, the question, raised by these appeals, of whether a policy provision is ambiguous is a question of law that is also reviewed *de novo. See GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 818–19 (6th Cir.1999).

Ohio law provides that "[w]hen a complaint against an insured states both negligence and intentional tort claims that are based upon the same occurrence, the insurance company that is contractually obligated to defend the insured in negligence actions is required to make a defense as to both claims against the insured, regardless of the ultimate outcome of the action or the insurance company's ultimate liability to the insured." *Preferred Mut. Ins. Co. v. Thompson,* 23 Ohio St.3d 78, 491 N.E.2d 688, 690 (Ohio 1986). Thus, if any one of the claims in an underlying action is covered under the policy, Illinois Union has a duty under Ohio law to defend Robert Shefchuk or the estate in that entire case, as long as all the claims in the case were based on the same occurrence, even though the case might also include claims that were not covered under the policy. Ohio contract law also requires that a promise by an insurance company to defend against groundless, false, or fraudulent allegations—as the Money Concepts policy does in this case—obligates the insurance company to "assume the defense of the action where the underlying tort complaint states a claim which is potentially or arguably within the policy coverage." *Sanderson v. Ohio Edison Co.,* 69 Ohio St.3d 582, 635 N.E.2d 19, 23 (Ohio 1994). In addition, under Ohio law, "an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." *Hybud Equip. Corp. v. Sphere Drake Ins. Co.,* 64 Ohio St.3d 657, 597 N.E.2d 1096, 1102 (Ohio 1992).

Finally, Ohio law requires that "words and phrases used in an insurance policy ... be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be

determined." *Gomolka v. State Auto. Mut. Ins. Co.,* 70 Ohio St.2d 166, 436 N.E.2d 1347, 1348 (Ohio 1982). When a term in a policy is open to multiple possible interpretations, the contract is construed against the insurer. *See King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383 (Ohio 1988).

## A. The Dishonesty Exclusion

█ Reading the policy as a whole, the district court found that the first sentence of the dishonesty exclusion was "meaningless or illogical." As noted above, that provision barred coverage of claims "which arise out of or are contributed to by a 'wrongful act' that is committed by or at the discretion of an insured and which is dishonest, fraudulent, criminal, malicious, or knowingly wrongful." But, as we also noted, in another section the policy defines "wrongful act" as a *"negligent* breach of duty, error, misstatement, omission, 'publication injury' or *other negligent act."* (Emphasis added.) The district court therefore interpreted the initial sentence of the dishonesty exclusion to bar coverage of claims arising out of acts that are *both* negligent *and* deliberate or non-negligent, *i.e.,* "dishonest, fraudulent, criminal, malicious, or knowingly wrongful." Noting that "dishonest, fraudulent, or criminal acts are inherently more than negligent," the district court ruled that because "the clause excludes only claims that are both negligent and not negligent," its "logical incoherence renders the first sentence of the clause unenforceable."

As a result, the district court enforced the exclusion clause against the Shefchuks only as far as the claims were excluded by the second sentence of the clause, *i.e.,* that "subset of dishonest, fraudulent, or criminal acts in which the actor acts so as to profit personally from his misdeeds." The court noted, "One can imagine dishonest acts that do not come within this definition," and hypothesized a situation in which "Gregory Shefchuk persuaded his father to guarantee forged signatures so that he (Gregory) could profit." If the father did so for reasons other than his own personal gain, the court posited, "the claim against Robert Shefchuk would not come within the second sentence of the exclusion clause, although it would come within the first, unenforceable, sentence of the clause."

Without doubt, the culprit in this case is poor drafting. It is not difficult to discern what the insurance company probably *meant* to do when it drafted the coverage and exclusion provisions in this policy—to insure against negligent acts but not dishonest, fraudulent, or illegal acts or those intended to result in personal gain. As simple as this should be in terms of clear English exposition, that is not what the contract actually says. Hence, if the first sentence of the dishonesty exclusion is not unenforceable because illogical, when it is read together with other provisions in the policy, it certainly creates an ambiguity.

Whether viewed as illogical or ambiguous, the result in interpretation is virtually the same. Because insurance policy exclusions apply only to what is *clearly* intended to be excluded, *Hybud Equip. Corp.,* 597 N.E.2d at 1102, and because ambiguities in insurance contracts are construed against the insurer, *King,* 519 N.E.2d at 1383, Illinois Union cannot avoid its duty to defend the claims in the underlying actions on the ground that some of those claims appear to arise out of knowingly wrongful acts, because such acts, by definition, are not negligent.

## B. Meaning of "An Insured"

█ Illinois Union's next avenue of attack comes in the interpretation of the term "an insured" in the exclusion clauses.

Arguing that the term is synonymous with "any insured," Illinois Union asks us to conclude that none of the underlying actions against either Robert Shefchuk or the estate are covered under the policy because all of them "arise out of" the clearly excluded wrongful conduct of Gregory Shefchuk, who was "an insured" under the contract. Robert Shefchuk, on the other hand, argues that the term "an insured" in the policy can mean the same thing as "the insured," depending upon the context in which it is used. Under his reading, the exclusion clause would apply only if the excluded conduct was undertaken by the insured seeking coverage, i.e., by Robert Shefchuk himself.

The contract provides that every registered representative is "an insured" under the policy, "but only for liability arising out of or in the course and scope of his/her duties." Under this definition, assuming that Gregory Shefchuk was acting within the course of his duties (an issue contested by Robert Shefchuk), Gregory Shefchuk was "an insured" under the policy. Illinois Union takes the position that excluded acts by Gregory Shefchuk therefore bar coverage of all insureds under the policy. It contends that the simple meaning of the word "an," as opposed to "the," supports this conclusion, quoting *Allstate Ins. Co. v. Foster*, 693 F.Supp. 886, 889 (D.Nev.1988) (citing Black's Law Dictionary, 1, 1324 (5th ed.1979)), for the explanation that "['a'] or 'an' is an indefinite article often used in the sense of 'any' and applied to more than one individual object; whereas 'the' is an article which particularizes the subject spoken of." Illinois Union urges us to interpret the contract using these accepted definitions—under Ohio law, terms in insurance contracts must be given their plain and ordinary meaning, *see Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 790 N.E.2d 1199, 1202 (Ohio 2003)—and to hold that the term "the insured" refers to a particular insured, such as the person claiming coverage, while "an insured" refers to any one of the insureds under the policy.

In some cases, courts considering the meaning of "an insured" in insurance contract exclusions have held that the exclusions apply if any co-insured under the contract engages in the excluded conduct.[1] In this case, however, the issue is complicated by the policy's severability clause. As noted above, the policy contains a "multiple insureds" provision that states, in part: "The inclusion of multiple insureds will not affect the rights of any such persons or organizations to be protected by this policy. We will cover each such person or organization just as if a separate policy had been issued to each." Courts considering similar provisions have split

---

1. *See, e.g., Allstate*, 693 F.Supp. at 889 ("Since [the policy] excludes coverage for harm resulting from the intentional or criminal 'acts of *an* insured person,' the insurance policy excludes coverage to any other insureds ... for liability arising from the harm which is directly attributable to the intentional or criminal act."); *Allstate Ins. Co. v. Stamp*, 134 N.H. 59, 588 A.2d 363, 365 (N.H. 1991) ("We find that Allstate's use of the indefinite article 'an,' rather than the definite 'the,' before 'insured' is a clear reference to *any* insured who commits an intentional act resulting in damages, regardless of whether or not he is the particular insured seeking coverage."); *Farmers Ins. Co. of Washington v. Hembree*, 54 Wash.App. 195, 773 P.2d 105, 108 (Wash.Ct.App.1989) ("Here, the exclusion is not restricted to intentional acts of the particular insured sought to be held liable, but broadly excludes coverage for all intentionally caused injury or damage by *an* insured, which includes anyone insured under the policy."); *Travelers Ins. Co. v. Blanchard*, 431 So.2d 913, 915 (La.Ct.App.1983) ("[T]he exclusion is not restricted to intentional acts of the particular insured sought to be held liable, but broadly excludes coverage for *all intentionally caused* injury or damage by *an insured person*.").

over whether such a severability clause makes the term "an insured" ambiguous.[2] Those that have found ambiguity have been unable to reconcile a reading of the term "an insured" that denies coverage to people based on the actions of their co-insureds with a clause specifying that coverage is separate for each insured. As the Wisconsin Court of Appeals wrote in *Nemetz*, 135 Wis.2d 245, 400 N.W.2d 33, 38 (Wis.Ct.App.1986): "We conclude that this contract is ambiguous because the severability clause creates a reasonable expectation that each insured's interests are separately covered, while the exclusion clause attempts to exclude coverage for both caused by the act of only one."

Although we recognize that the question is a close one, we conclude that in this case the severability clause in the Illinois Union policy makes the term "an insured" ambiguous. In the cases in which the courts have found to the contrary, the severability clauses in the disputed policies have tended to provide generally that "the insurance applies separately to each insured." The clause in the Illinois Union policy, on the other hand, includes an additional provision: "We will cover each such person or organization just as if a separate policy had been issued to each." There is no way we can see to reconcile a provision this explicit with the assertion that the exclusions bar coverage of claims arising out of the excluded acts of anyone listed as

"an insured" under the policy. If, under the Illinois Union policy, the actions of one insured can preclude another insured from coverage, then the two are not being treated as though a separate policy had been issued to each of them. Under the particular facts of this case, we find no error in the district court's determination that the provisions in question created an ambiguity that must be resolved in the insured's favor.

We conclude that the same is true with regard to the insurance company's argument that the claims-exclusion endorsement bars coverage here, as well as its contention that even the negligence claims against Robert Shefchuk are barred because each of the exclusion clauses has language excluding claims that "arise out of" excluded conduct by "an insured." We reach this conclusion despite the fact that it appears, superficially at least, to equate the terms *"an* insured" and *"the* insured," a result that Illinois Union contends is simply not possible, given the universal understanding of the difference between "an" (the indefinite article meaning "any") and "the" (the definite article) in common English usage. Again we point to drafting as the source of the difficulty here. For example, the dishonesty exclusion that is at the heart of the dispute in this case uses the term "an insured" in its first sentence, the term "the insured" in its second sen-

**2.** *Compare, e.g., State Farm Fire & Cas. Ins. Co. v. Keegan*, 209 F.3d 767, 771 (5th Cir. 2000) (finding severability clause makes policy language ambiguous); *Catholic Diocese of Dodge City v. Raymer*, 16 Kan.App.2d 488, 825 P.2d 1144, 1151 (Kan.Ct.App.1992) (same); *Northwestern Nat. Ins. Co. v. Nemetz*, 135 Wis.2d 245, 400 N.W.2d 33, 38 (Wis.Ct. App.1986) (same), *with, e.g., Allstate Ins. Co. v. Kim*, 121 F.Supp.2d 1301, 1308 (D.Haw. 2000) (stating that "the majority opinion holds, as does this Court, that a severability clause does not prevent an intentional acts exclusion from barring coverage for the al-

leged negligence of an intentional tortfeasor's coinsureds"); *Mut. of Enumclaw Ins. Co. v. Cross*, 103 Wash.App. 52, 10 P.3d 440, 445 (Wash.Ct.App.2000) (finding that severability clause did not make policy ambiguous); *Gorzen v. Westfield Ins. Co.*, 207 Mich.App. 575, 526 N.W.2d 43, 45 (Mich.Ct.App.1994) (same); *United Ohio Ins. Co. v. Metzger*, 1999 WL 84201 (Ohio Ct.App. Feb 8, 1999) (unreported decision) (using severability clause to find that wife was separately insured from husband under insurance policy but not mentioning clause in discussion of exclusion that used term "an insured").

tence, and the term "any insured" in its third and last sentence, which bars coverage of insider-trading. If these phrases were not meant to be used interchangeably, the contract should have made the distinctions clear.

### III. Specific Claims

On appeal, the parties insist that the district court mischaracterized various of the underlying actions. In particular, Illinois Union contends that it should not have to defend Robert Shefchuk in the *Meyer* and *Bradler* actions, arguing that the complaints in those cases alleged only intentional torts and negligence that arose from those intentional torts. Robert Shefchuk, in return, claims that the district court should have found a duty to defend in the *Savarino* action, asserting that the *Savarino* action includes negligence claims separate and apart from the intentional tort claims.

■ As a preliminary matter, we reject the argument advanced by both Robert Shefchuk and the estate that the exclusionary clauses in the Illinois Union policy do not come into effect unless the excluded acts relied upon by the insurer to deny coverage are actually proven, rather than merely alleged in the underlying actions. Robert Shefchuk points to language in the claims exclusion endorsement, for example, that bars coverage for an act that "occurred" before the policy's effective date and was "known" to an insured. The term "occurred," he argues, means an event that actually happened. In contrast, some of the other exclusions in the policy—ones that are not otherwise relevant here—use the term "actual or alleged."

We think the answer to this purported interpretation is found in Ohio case law governing an insurer's promise to defend against groundless, false, or fraudulent allegations, as is the case with the Illinois Union policy. Under that law, "the test of the duty of an insurance company ... to defend an action against an insured, is the scope of the allegations of the complaint in the action against the insured," *Motorists Mutual Ins. Co. v. Trainor*, 33 Ohio St.2d 41, 294 N.E.2d 874, 875 (Ohio 1973) (syllabus), even though the " 'scope of the allegations' may encompass matters well outside the four corners of the pleadings." *City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 459 N.E.2d 555, 558 (Ohio 1984). Thus, a court deciding whether an underlying action is covered by an insurance policy is required to determine, by looking at the scope of the allegations, whether they "state a claim which is potentially or arguably within the policy coverage." *Id.* In other words, the duty to defend is linked to the duty to indemnify, and the duty to defend arises only when the allegations potentially state a claim that is within the policy's coverage. This interpretation is supported by the language of the policy at hand, in which the duty to defend is limited to suits which "seek[ ] 'damages' which are payable under the terms of this policy."

If the duty to defend arises only when the allegations potentially state a claim that is within the policy's coverage, it follows that there is no duty to defend when there is no possibility that the insurance company will have to pay damages. The question thus becomes whether, in the underlying actions at issue, there was a potential that the insurance company would have to pay damages. If there was such a possibility, then the allegations stated a claim that was potentially within the policy's coverage; if there was no such possibility, the allegations did not state a claim potentially within the policy's coverage and there was no duty to defend. We thus turn to a review of the individual claims over which there remains a dispute on

appeal in order to determine, not whether the facts that would exclude coverage have actually been shown, but whether the allegations present a claim potentially within the coverage of the policy and thus impose a duty to defend.

## A. The Meyer Claim

■ Illinois Union objects to the district court finding that it had a duty to defend in *Meyer v. Shefchuk*, Case No. 98M169 (Geauga County Ct. Comm. Pleas). In that action, Robert and Judith Meyer alleged that Robert Shefchuk told them he would invest their money in "safe, conservative, diversified and suitable investments which would generate a yield of at least 13%." In reliance upon those representations, Robert Meyer took retirement under a plan that provided a lump sum payment of $360,000 which the couple then invested with the Shefchuks. According to the complaint, Robert Shefchuk invested the sum in illiquid and highly speculative investments that included large up-front commissions and fees from which he benefitted, charged the Meyers with additional undisclosed commissions and fees, misrepresented to the Meyers the net value of their portfolio, and failed to disclose to them that the distributions they were receiving were made largely from principal, not income, despite the fact that the Meyers had told Shefchuk not to make distributions from the principal. Throughout, Shefchuk "repeatedly reassured [the Meyers] that his recommended investment portfolio was operating profitably and in accord with their original expressed goals." The Meyers sued the Shefchuks, RCS Financial Services, Money Concepts, and International Financial Services Capital Corporation for fraud and misrepresentation, breach of fiduciary duty, breach of express and implied contract, and negligence. The negligence claim reads:

Defendants had a duty to investigate and determine the financial sophistication, needs and goals of the Meyers and to recommend and invest only in securities which were suitable to their expressed and apparent needs and goals. Defendants breached this duty to "know your customer" by investing in unsuitable, illiquid and high risk ventures which were totally inappropriate to the Meyers investment needs.... Defendants' actions did not meet the standard of care required of their profession under the circumstances.

We are satisfied that however groundless this allegation might have turned out to be, it stated a claim for negligence that required Illinois Union to defend on the insured's behalf.

## B. The Bradler Claim

■ Gary and Marleen Bradler brought claims against American Skandia, Money Concepts, Kathleen Shefchuk as Executrix of the Estate of Gregory Shefchuk, Robert Shefchuk, and a number of banks claiming, in count two, that American Skandia was "presented with an unauthorized request for withdrawal from Defendant Gregory Shefchuk and/or Defendant Money Concepts and/or Robert Shefchuk" that contained Gary Bradler's forged signature, and that the "forged signature was guaranteed by Defendants, Robert Shefchuk and Money Concepts." The district court found that it was unclear whether the complaint claimed an intentional tort against Robert Shefchuk or just that he had negligently guaranteed a signature. Again, although the claim might ultimately have proven groundless, we agree and find a duty to defend here, given that the claim is potentially within the policy's coverage.

## C. The Savarino Claim

■ Robert Shefchuk asserts that the district court erred in finding that Illinois

Union did not have to defend him in *Savarino v. Shefchuk*, Case No. 99P528 (Geauga County Ct. Comm. Pleas). That action alleged that James Savarino had tendered $30,000 to Robert Shefchuk for him to invest, but that Shefchuk neglected to invest the money or report to Savarino on the state of the account. The complaint was entitled a "complaint for negligence" and alleged, in part, that "[d]efendant has failed to invest, has negligently managed, or has otherwise absconded with Plaintiff's $30,000."

Contrary to the district court's ruling, we conclude that the *Savarino* complaint potentially states a claim that is within the policy's coverage. It is not a situation, like that described by the district court, in which a contract claim is mislabeled as a negligence claim and there is no possibility that the claim will end up being under the policy's coverage. Rather, in this situation, Savarino apparently did not know what happened to his money, just that he gave it to Robert Shefchuk to invest and that Shefchuk did not invest it. Though the facts set out in the complaint, if proved, might tend to lead to the conclusion that Shefchuk engaged in intentional wrongdoing, it is also possible that the failure to invest occurred through negligence and, if that is the case, the claim would have been covered by the insurance policy. On this portion of the judgment, we conclude that the insurance company had a duty to defend, and we therefore find it necessary to reverse the district court's order granting summary judgment in Illinois Union's favor.

**D. The Claims Against Gregory Shefchuk's Estate**

In taking the allegations of the complaints filed against the estate as fact and determining whether coverage existed based on those facts, the district court technically failed to follow the requirement under Ohio law that the claims be reviewed to determine whether there was any set of facts in the complaint that could possibly have led to a finding of coverage. *See Cole v. Am. Indus. & Res. Corp.*, 128 Ohio App.3d 546, 715 N.E.2d 1179, 1184 (Ohio Ct.App.1998) ("This test provides that if there is no set of facts alleged in the complaint against an insured which, if proven true, would result in the insurance company's duty to pay damages, then the insurance company need not provide a defense.") As a result, we would be justified in remanding to the district court for individualized findings. However, at oral argument of this appeal, counsel for the estate, when asked which of the underlying actions should have survived summary judgment, was unable to give a satisfactory answer, responding, "Perhaps the Meyers' case." Under these circumstances, we decline to order additional review.

### CONCLUSION

For the reasons set out above, we conclude that the district court's judgment should be AFFIRMED in all respects except with regard to the ruling on Illinois Union's obligation to defend in the underlying action filed against Robert Shefchuk by James Savarino. As to that portion of the district court's decision, the judgment is REVERSED and the case is REMANDED for further proceedings in conformity with this opinion.